TONI DAVENPORT BOST, PLAINTIFF v. HENRY CHRISTIAN VAN NORTWICK, DEFEND-
ANT AND IN RE SARA YVONNE VAN NORTWICK AND IN RE CHRISTIAN OLIVER
VAN NORTWICK

No. 9311DC995

(Filed 15 November 1994)

1. **Parent and Child § 97 (NCI4th)— termination of parental
   rights—noncustodial parent—best interest of children—
   sufficiency of evidence**

   The trial court abused its discretion in concluding that it was
   in the best interest of the children to terminate respondent's
   parental rights where respondent father, the noncustodial parent,
   suffers from alcoholism and was unable to maintain permanent
   employment up until 1992, was financially inattentive to the chil-
   dren up to 1992, and was unable to maintain permanent relation-
   ships and visited the children sporadically; petitioner mother
   maintained steady employment, remarried a business owner who
   made financial contributions while the father was not paying
   child support and who wished to adopt the children; the children,
   petitioner, and her new husband formed a happy, financially sta-
   ble family unit to which respondent has become a disruption; and
   respondent has ceased consuming alcohol, attended Alcoholics
   Anonymous, obtained employment, begun paying child support,
   and visited the children. A finding that the children are well set-
   tled in their new home does not alone support a finding that it is
   in the best interest of the children to terminate respondent's
   parental rights, while the guardian ad litem and the court

1

appointed psychologist agreed that it would be in the best interest of the children not to terminate respondent's parental rights.

**Am Jur 2d, Parent and Child § 11.**

**2. Parent and Child § 107 (NCI4th)— termination of parental rights—nonsupport—evidence insufficient**

There was insufficient evidence to support the trial court's finding that substantial grounds existed for terminating respondent's parental rights pursuant to N.C.G.S. § 7A-289.32(5) where the court found that defendant willfully failed without justification to pay child support for a year preceding the filing of the petition in 1992, but there was overwhelming evidence that respondent was unable to pay due to his financial status and his alcoholism and that respondent decided to remain sober in 1990, regained his driver's license in 1992, and began paying child support in 1992.

**Am Jur 2d, Parent and Child § 11.**

**3. Parent and Child § 102 (NCI4th)— termination of parental rights—noncustodial parent—abandonment**

Respondent's inability to pay child support due to his dependency on alcohol and related financial problems does not support a finding of willful abandonment; during the relevant time, the six consecutive months preceding the filing of the petition, respondent visited the children during the Christmas holiday, attended three soccer games, and told petitioner that he wanted to pay his back child support. Also, respondent lived in Greenville while his children lived in Sanford, did not have a driver's license from 1985 until March of 1992 and was not able to drive to see the children on his own, and his actions did not evince a settled purpose to forego all parental duties and relinquish all parental claims to the children. N.C.G.S. § 7A-289.32(8).

**Am Jur 2d, Parent and Child § 11.**

**4. Parent and Child § 100 (NCI4th)— termination of parental rights—noncustodial parent—neglect**

Assuming that evidence that respondent failed to visit his children on a regular schedule and was sporadic with support payments supports a finding of neglect, the record shows a considerable change in conditions such that a finding of neglect at the time of the hearing is not supported by clear, cogent and con-

BOST v. VAN NORTWICK

[117 N.C. App. 1 (1994)]

vincing evidence. Respondent decided to cease consuming alcohol in 1990 and began attending Alcoholics Anonymous, had been alcohol free for over two years at the time of the termination proceeding, was employed in a steady job for the first time in a number of years, and had attended soccer games after he regained his driver's license and expressed the wish to resume visitation with the children. N.C.G.S. § 7A-289.32(2).

**Am Jur 2d, Parent and Child § 11.**

5. **Divorce and Separation § 372 (NCI4th)— visitation—suspension—change of circumstances—evidence insufficient**

The trial court's decision to suspend respondent's visitation rights with his children was not supported by the facts, the law, or public policy where the court based its findings of a substantial change in circumstances on the termination of respondent's parental rights, reversed elsewhere in this opinion; the expressed desire of the children to not visit with respondent and to be adopted by their stepfather, which does not support a finding of changed circumstances and a conclusion that it is in the best interest of the children to suspend respondent's visitation rights; and the finding that respondent has been absent from his children's lives, which was not supported by the evidence where the record showed that respondent had visited the children during the Christmas holiday in 1990, that he had seen the children in 1991 at a dance recital, a baseball game, and during the Christmas holiday, and that he had gone to three of the children's soccer games in 1992.

**Am Jur 2d, Divorce and Separaration §§ 1011 et seq.**

Judge Wynn concurring with a separate opinion.

Judge Johnson dissenting.

Appeals by respondent and guardian ad litem from orders entered 19 May 1993 by Judge A. A. Corbett, Jr. in Lee County District Court. Heard in the Court of Appeals 23 May 1994.

Petitioner Toni Davenport Bost and Respondent Henry Christian Van Nortwick were married in May, 1979 and separated on 1 October 1982. Two children were born of this marriage, Sara Yvonne Van Nortwick, born 17 May 1980, and Christian Oliver Van Nortwick, born 12 May 1982. The parties were divorced by a judgment entered 26

**BOST v. VAN NORTWICK**

[117 N.C. App. 1 (1994)]

April 1984, and petitioner was granted primary custody of the minor children by a consent judgment entered 21 July 1983.

On 22 May 1992, petitioner filed a petition to terminate the parental rights of respondent with regards to the minor children pursuant to Article 24B of Chapter 7A of the North Carolina General Statutes. On 22 June 1992, respondent filed a response to the petition asking the court to appoint an independent guardian ad litem to represent the interests of the children and to deny the petition. Thereafter, respondent filed a motion in the cause to expand his visitation rights with the minor children, and petitioner filed a motion to suspend respondent's visitation rights with the minor children.

On 31 August 1992, Judge A. A. Corbett, Jr. entered an order granting petitioner's motion to suspend respondent's visitation on a temporary basis pending recommendations to be made by a court appointed psychologist, Dr. Linda Silber. Subsequently, by order entered 6 January 1993, April S. Stephenson was appointed as guardian ad litem of the minor children.

Respondent's motion to enlarge his visitation rights and the petition to terminate respondent's parental rights came on for hearing in Lee County District Court during the special terms held 29 January 1993, 24 February 1993, and 2 April 1993. On 19 May 1993, Judge A. A. Corbett, Jr. entered an order terminating respondent's parental rights as to the minor children. Also on this date, Judge Corbett entered an order denying respondent's motion to enlarge his visitation rights and granting petitioner's motion to suspend respondent's visitation rights and a supplemental order prohibiting respondent from having any contact with the minor children.

Respondent moved for the court to alter or amend its order denying visitation, for a new trial, and to suspend any adoption proceedings. In open court, Judge Corbett denied respondent's motions to amend and for a new trial and granted respondent's motion to stay any adoption proceedings of the children.

From the order terminating respondent's parental rights, respondent and guardian ad litem appeal. From the order denying respondent's motion for visitation, respondent appeals.

**BOST v. VAN NORTWICK**

[117 N.C. App. 1 (1994)]

*Staton, Perkinson, Doster, Post, Silverman and Adcock, by Jonathan Silverman, for petitioner plaintiff-appellee.*

*Wyrick, Robbins, Yates & Ponton, L.L.P., by Robert A. Ponton, Jr. and Pamela P. Keenan; and Armstrong & Armstrong, P.A., by Marcia H. Armstrong, for respondent-appellant.*

*April E. Stephenson for appellant guardian ad litem.*

ORR, Judge.

[1] The facts of this case present this Court with a not uncommon scenario wherein a non-custodial parent lives in a community separate and apart from the community in which his ex-spouse, the custodial parent, and his children live. In this case, in addition, the ex-spouse subsequently has remarried and formed a happy, financially stable family unit that includes the custodial parent, her new spouse, and the children. This new family unit no longer needs the financial or emotional support of the non-custodial parent and has come to view the non-custodial parent as an intrusion upon the day-to-day activities and interactions of this new family unit. Subsequently, the custodial parent has sought to terminate the non-custodial parent's parental rights.

The specific facts of this case are such that the respondent father admittedly suffers from alcoholism and up until 1992 has been unable to maintain permanent employment. Further, the facts show that up until 1992 respondent has been financially inattentive to his children due to his alcoholism and lack of gainful employment. Defendant has not been able to maintain permanent relationships due to his alcoholic condition, and over the years he has sporadically visited his children, failing to see his children at all in 1988, the year respondent was convicted of driving while his license was permanently revoked and respondent ceased driving. Also in 1988, respondent moved to Greenville, North Carolina, to live with his mother; petitioner and the children, however, remained in Sanford.

The facts also show, however, that in 1990, respondent decided to cease consuming alcohol and began attending Alcoholics Anonymous. Further, respondent has been employed as an agricultural chemical salesman for SMI, a company out of Valdosta, Georgia, since March, 1992. Subsequently, in June, 1992, respondent paid $750.00 in back child support, and on 22 July 1992 respondent paid $7,750.00 in back child support. In addition, respondent visited the children once

BOST v. VAN NORTWICK

[117 N.C. App. 1 (1994)]

in 1989, once in 1990, three times in 1991, and three times in 1992 prior to petitioner filing this action in May, 1992. Based on her review of these and other facts, the guardian ad litem appointed to represent the interests of the children in this case recommended that it would not be in the best interest of the children to terminate respondent's parental rights.

The facts concerning petitioner mother, on the other hand, show that since her divorce from respondent in 1984, she has maintained steady employment with her family business located in Lee County and that on 3 December 1988, petitioner was remarried to Jim Bost, whom she had known since childhood. Jim Bost is the sole owner of a food processing company located in Lee County, and the trial court found that while respondent was not paying child support, "Mr. Bost did willingly make financial contributions to the household for the benefit of the children and between [petitioner] and [Mr. Bost] there are adequate financial resources to meet the financial needs of the children in the future, including college educations."

The trial court also found that Mr. Bost, petitioner, and the children reside in a four bedroom, five bathroom home situated in Lee County, surrounded by twenty acres of land, which home adjoins a residential neighborhood where the children have numerous friends. The court further found:

Each of the children has developed a happy and secure relationship with their family as they know it, with this family being [petitioner] as mother, Jim Bost as father, the Davenports[, petitioner's parents,] as the paternal [sic] grandparents and Pete Bost[, Mr. Bost's mother,] as the maternal [sic] grandmother. The children identify with the Davenports and Bosts as their aunts and uncles and see the Bost children as their cousins. Each of the children wants to stay within this family network and considers [respondent's] presence in their lives to be a painful disruption.

Additionally, the court found that petitioner and Mr. Bost want Mr. Bost to adopt the children and that "Mr. Bost will in fact adopt the children at such time as it is legally proper to do so." Thus, this Court is presented with a situation wherein the petitioner mother and children have formed a happy, financially stable family unit with petitioner's new husband, and subsequently, respondent, the natural father of the children, has become a disruption to this new family unit.

Article 24B of Chapter 7A of the North Carolina General Statutes governs termination of parental rights. "Under the requirements of Chapter 7A, the trial court must make a two-step inquiry. First, it must consider whether substantial grounds exist for the termination of parental rights." *In re McMahon*, 98 N.C. App. 92, 94, 389 S.E.2d 632, 633 (1990). Second, upon a finding that substantial grounds exist for termination of parental rights, the court must "determine whether the termination of parental rights is in the best interest of the child." *Id.*; N.C. Gen. Stat. § 7A-289.31.

N.C. Gen. Stat. § 7A-289.31 states:

(a) Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child *unless the court shall further determine that the best interests of the child require that the parental rights of such parent not be terminated.*

(b) Should the court conclude that irrespective of the existence of one or more circumstances authorizing termination of parental rights, the best interests of the child require that such rights should not be terminated, the court shall dismiss the petition, but only after setting forth the facts and conclusions upon which such dismissal is based.

(Emphasis added.) Thus, "upon a finding that grounds exist to authorize termination, the trial court is never required to terminate parental rights under any circumstances, but is merely given the discretion to do so." *In re Tyson*, 76 N.C. App. 411, 419, 333 S.E.2d 554, 559 (1985). "[W]here there is a reasonable hope that the family unit within a reasonable period of time can reunite and provide for the emotional and physical welfare of the child, the trial court is[, therefore,] given discretion not to terminate rights." *In re Montgomery*, 311 N.C. 101, 108, 316 S.E.2d 246, 251 (1984).

In the present case, the trial court terminated respondent's parental rights based on willful failure to support the children, willful abandonment of the children, neglect, and on its finding that terminating respondent's parental rights was in the best interest of the children. In reviewing this case to determine whether the trial court properly granted petitioner's wish to terminate respondent's parental rights, we must keep in mind that the overriding consideration is the

welfare or best interest of the children, in light of all the circumstances. *See Phelps v. Phelps*, 337 N.C. 344, 446 S.E.2d 17 (1994).

The best interest of the children is " ' ". . .'the polar star by which the discretion of the court is guided.' " ' " *Id.* at 354, 446 S.E.2d at 23 (quoting *Hinkle v. Hinkle*, 266 N.C. 189, 197, 146 S.E.2d 73, 79 (1966)). In the case *sub judice*, the trial court concluded,

> [g]iven that the children are thriving under their present circumstances, the presence of a complete family structure able to meet the emotional and economic needs of the children, the expressed desire of the children not to see their father, their desire to be adopted by Jim Bost and the pain and disruption involved with any attempt at reestablishing a relationship, the [c]ourt finds as a fact that it would not be in the best interest of the children to follow the Guardian Ad Litem's reccommendations [sic] and furthermore that termination is in their best interest.

Based on our review of the record, we find that the trial court abused its discretion in concluding that it was in the best interest of the children to terminate respondent's parental rights.

First, a finding that the children are well settled in their new family unit made up of petitioner, Mr. Bost, and the children, does not alone support a finding that it is in the best interest of the children to terminate respondent's parental rights. In *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994), a recent decision involving a custody dispute between the biological parents of the child and persons with whom the biological mother had placed the child, our Supreme Court focused on the paramount right of a child's natural parents to the custody, care and nurturing of that child to award custody of the child to the natural parents. The Court stated:

> Although a trial court "might find it to be in the best interest of a legitimate child of poor but honest, industrious parents" that his custody be given to a more affluent person, such a finding "could not confer a right as against such parents who had not abandoned their child, even though they had permitted him to spend much time" with the more affluent person. . . . Instead, "parents' paramount right to custody would yield only to a finding that they were unfit custodians because of bad character or other, special circumstances. . . . ."

*Id.* at 403, 445 S.E.2d at 904 (citation omitted). Similarly, in the present case, the finding that Mr. Bost could provide a more stable envi-

ronment and better financial situation for Sara and Christian than respondent, does not mandate that respondent's rights as the natural father of Sara and Christian be terminated. Certainly in a situation where the custodial parent does not remarry and therefore needs the financial support of the non-custodial parent, the custodial parent would normally not seek to terminate the parental rights of the non-custodial parent. In such a situation, the custodial parent would be most likely to oppose any attempt to terminate the non-custodial parent's parental rights, as this would terminate the non-custodial parent's financial obligations to the children.

Further, the expressed wish of a child is never controlling on a court. As stated by our Supreme Court in *Clark v. Clark*, 294 N.C. 554, 576-77, 243 S.E.2d 129, 142 (1978):

"When the child has reached the age of discretion, the court may consider the preference or wishes of the child to live with a particular person. A child has attained an age of discretion when it is of an age and capacity to form an intelligent or rational view on the matter. The expressed wish of a child of discretion is, however, never controlling upon the court, since the court must yield in all cases to what it considers to be for the child's best interests, regardless of the child's personal preference. . . . The preference of the child should be based upon a considered and rational judgment, and not made because of some temporary dissatisfaction or passing whim or some present lure."

On the other hand, our review of the guardian ad litem's report and the report of the court appointed psychologist, Dr. Silber, show that these two experts agree that it would be in the best interest of the children <u>not</u> to terminate respondent's parental rights. After interviewing respondent, the guardian ad litem found:

In March, 1992, [respondent] got his driver's license back and started to come to Sanford on Sundays to watch his children's soccer games. [Respondent] says that Sara would introduce him as her Dad to her friends. It was at this time [respondent] told [petitioner] that he wanted to pay his back child support and set up regular visitation and in May, 1992, [respondent] says [petitioner] froze him out of their lives.

[Respondent] states that he is concerned that his children are being brainwashed by [petitioner].

[Respondent] says that he had a good loving relationship with his children and that he wants that relationship with them again.

He knows the process will be slow, but . . . he wants to make it work! [Respondent] says "I hurt my children bad[ly,] and I want to make that up to them."

[Respondent] has plans to move to Sanford to facilitate his visitation with his children and so that visiting with them will not take them away from their friends and activities.

. . .

. . . [Respondent] has paid fifteen thousand ($15000.00) in child support since July, 1992.

The guardian ad litem also interviewed petitioner and made the following findings:

[Petitioner] says that [respondent's] parental rights should be terminated because of a pattern [respondent] followed for ten (10) years: he wouldn't show up for scheduled visitation, he was not stable and between 1985 and the spring of 1991 [respondent] saw the children eight (8) times.

Further, petitioner told the guardian ad litem that she started dating Mr. Bost in 1985 and married him in 1988. She stated that the children call Mr. Bost dad and get along well with him. Petitioner also told the guardian ad litem that respondent "missed some of the children's birthdays and was absent four (4) Christmases; that he brought Christmas presents and saw the children last Christmas, but missed the past Christmas completely."

Based on her interview with Sara, the guardian ad litem found that Sara did not want to visit respondent "because her friends are . . . in Sanford." Sara also told the guardian ad litem that respondent did not send her a birthday card or gift for her last birthday. Similarly, Christian told the guardian ad litem that he did not want to see respondent on the weekends "because he doesn't want to be away from his friends and family." Both children told the guardian ad litem that they call Mr. Bost "Dad" and that they want Mr. Bost to adopt them.

The guardian ad litem also reviewed Dr. Newmark's report, a clinical psychologist who evaluated respondent, and found the following findings by Dr. Newmark important:

1. [Respondent's] biggest disappointment has been the limited contact with his children;

2. no evidence of a high potential for violence or assault;

3. [respondent] is able to control his substance abuse;

4. [respondent] fully accepts responsibility for his conflicts and behaviors and in no way attempts to project the blame on others;

5. no sign that he is at risk for dangerous or risk-taking behavior;

6. there are no contradictions to [respondent] having visitation rights with his children.

Subsequently, based on these findings and on her review of Dr. Silber's report, the guardian ad litem concluded:

> I understand [petitioner's] desire to have one complete family unit and to have stability in her children's lives. I also appreciate the children's reluctance to open themselves up to possible disappointment from their father and their desire not to have to go to Greenville and miss their friends and activities here in Sanford. But the fact remains that [respondent] is here, expressing a desire to have a relationship with his children and wanting somehow to make his previous mistakes up to his children. He has sought relief from the court and had made a substantial effort to make up his child support arrearage.

> As the court is aware, terminating a parent's rights is a drastic measure, which can have far reaching and devastating effects. My recommendation is that [respondent's] parental rights not be terminated, and that the parties attempt a reasonable visitation schedule with family counseling with psychiatrists for all involved, including [petitioner]. If, after all of this, the children on their own, decide to sever the relationship with their father, this will be their decision and no one elses [sic].

(Emphasis in original.)

Dr. Silber also interviewed the parties. After interviewing respondent, she found that respondent is aware that there is a lack of trust in his relationship with his children and that he let his relationship deteriorate due to his serious drinking problem. Respondent also indicated, however, that he had quit drinking and that he "wants to enhance [the children's] lives and is willing to visit with them for whatever period of time it takes in Sanford until they feel comfortable in his presence." Respondent also perceives petitioner "as an obstacle in his being able to establish a more positive relationship with the

children and feels she has many excuses for why the children are unavailable to him. He states that this occurred prior to his severing the relationship with them and worries this could happen again."

In her interview with Dr. Silber, petitioner indicated that she wants to sever respondent's relationship with the children so that Mr. Bost could adopt them. She told Dr. Silber many times that "they want to 'be a family' and she largely seems to view [respondent] as an intrusion in their lives." Petitioner also mentioned that she feared that respondent would hurt the children emotionally if he started drinking again and missing visitations.

Dr. Silber also interviewed Sara and found that she remembers her visits with respondent and stated that she always looked forward to these visits in the past. Sara was, however, disappointed by respondent four years ago when he stopped calling her or visiting her. Dr. Silber found:

> Sara clearly has strong affect about her father that is both positive and negative. She recalls an early good relationship with him but she has been hurt over this loss. She is afraid if she resumes a relationship with [respondent] she could be opening herself up to being vulnerable and getting hurt again. Clearly trust is a major issue as a result of the father's previous disruption and disappearance.

> [Sara] is clearly a child who has considerable affect and anxiety about [respondent]. For the most part she is very accommodating and particularly wants to please her mother and step-father. She also acknowledges some fear that it would be difficult to get to know [respondent] again because she "doesn't know him all that well". Psychologically this is a sensitive child who is very much a people-pleaser. She likes to avoid conflict, negative issues, or emotions. She is particularly guarded and protective of her mother's feelings. Although she verbally states she does not want any contact with her father, several times she spontaneously would bring him up in ways which would say this is still very much an open wound for her.

Further, during her first interview with Christian, Dr. Silber asked him if there was anything he would do to change his family with regards to respondent, and Christian "immediately displayed curiosity and stated he wished he could see [respondent] more. He stated part of this was because he doesn't know him very well but he, like his sister,

was adamant that he did not want to go to Greenville." Between the first and following visits, however, Christian was more guarded. Christian retracted his position and told Dr. Silber that he did not want to see respondent. Christian gave the same reasons for not wanting to see respondent as Sara gave, that he did not want to be away from his friends, that he would not have as much time with petitioner and Mr. Bost, and that he had his own activities. Dr. Silber perceived that Christian was "feeling a lot of pressure" from his family as the words he used were much the same as Sara's words, "which was not the case in the first interview."

Based on these interviews, Dr. Silber concluded:

While the children feel close and bonded with the [petitioner and Mr. Bost] they clearly know that their biological father wants to become a part of their lives. Currently they do not want this to happen but the ultimate impact of such a decision must be weighed as they become adults. Should they as young adults choose to resume a relationship with their father of their own volition, would they be resentful of their mother whom they might perceive as depriving them of the relationship with the father? Would they be resentful of the missed opportunities of knowing him during these years? These are strong possibilities.

Dr. Silber also concluded that "[i]f the father were to get involved in [the children's] lives only to disappoint them again, [the children] will have a clear sense that this is a result of his problems, not theirs. They would know for themselves the strengths and weaknesses of each parent." Further, Dr. Silber concluded that although it would take some time to rebuild trust, it is possible that the children's lives could be enhanced by a relationship with their father. Additionally, Dr. Silber also concluded that no evidence existed to show respondent poses any harm or physical danger to the children "nor is this likely to be the case unless he should resume his drinking." Our review of this evidence, in light of the paramount rights of the natural parent to help raise and support his children, shows that the trial court abused its discretion in concluding that it was in the best interest of the children to terminate respondent's parental rights.

Additionally, we find that the trial court erred in concluding that grounds for terminating respondent's parental rights existed under N.C. Gen. Stat. § 7A-289.32. A finding as to the presence of one of these grounds must be based on "clear, cogent, and convincing evidence." N.C. Gen. Stat. § 7A-289.30(e). "This intermediate standard is

greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." *In re Montgomery*, 311 N.C. at 109-10, 316 S.E.2d at 252.

N.C. Gen. Stat. § 7A-289.32 provides in pertinent part:

The court may terminate the parental rights upon a finding of one or more of the following:

. . .

(2) The parent has . . . neglected the child. The child shall be deemed to be . . . neglected if the court finds the child to be . . . a neglected child within the meaning of G.S. 7A-517(21).

. . .

(5) One parent has been awarded custody of the child by judicial decree, or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition willfully failed without justification to pay for the care, support, and education of the child, as required by said decree or custody agreement.

. . .

(8) The parent has willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition. . . .

## WILLFUL FAILURE TO PAY CHILD SUPPORT

[2]    First, we hold that the trial court erred in concluding that respondent willfully failed without justification to pay child support pursuant to N.C.G.S. § 7A-289.32(5). The word "willful" as applied in termination proceedings under Chapter 7A has been defined as " 'disobedience which imports knowledge and a stubborn resistance,' 'doing the act . . . without authority—careless whether he has the right or not—in violation of law.' " *In re Roberson*, 97 N.C. App. 277, 280, 387 S.E.2d 668, 670 (1990) (citation omitted). "Willful" has also been defined as "doing an act purposely and deliberately." *Id.* at 281, 387 S.E.2d at 670.

On the issue of respondent's "willful" failure to pay child support "without justification" the trial court found:

The court is satisfied that, [respondent] has a serious drinking problem and that in 1985 his driver's license was permanently revoked, which things <u>significantly disrupted his life and impaired his ability to have a relationship with his children and to provide support pursuant to this court's [o]rder</u>. However, the court is also persuaded and finds as a fact that during August 1990 [respondent] attempted to begin his sobriety and became very actively involved in a[n] entrepenurial [sic] project to mass produce pre[-]formed grits. This project required a great deal of intellectual stamina, physical endurance and tenacity. Apparently [respondent] applied all these skills and traits rather successfully and has brought his project to the point where some think it will soon reach fruition. [Respondent,] however, did not apply himself with the same diligence, tenacity and ingenuity to maintaining a relationship with his children after August 1990 or to paying his child support obligation as required by this court. Had [respondent] applied himself with the same energy to his children as he had to developing his grits project, he would not have been in a position where his child support obligation was $15,200.00 in arrears on the date the petition to terminate was filed nor would he be in a position where his children no longer wish to see him and want to be adopted by Jim Bost. Therefore the problems specified above are the result of choices that he willfully, deliberately, intentionally and voluntarily made rather than the result of problems with alcoholism or the lack of a driver[']s license.

(Emphasis added.)

Thus, although the trial court found that respondent had a serious drinking problem that impaired his ability to pay child support, the court based its conclusion that respondent "willfully, deliberately, intentionally and voluntarily" chose not to pay child support on its findings that respondent decided to remain sober and commit himself to a business endeavor in 1990. The court reasoned that respondent could have applied the same intellectual stamina, physical endurance and tenacity that he applied to the pre-formed grits project to paying child support. We do not agree that these findings support a conclusion that respondent willfully failed to pay child support.

Instead, our review of the record shows that overwhelming evidence existed which showed that respondent was unable to pay child support, due both to his financial status and his alcoholism. In *In re Roberson*, 97 N.C. App. at 281-82, 387 S.E.2d at 670, this Court recog-

nized that "a respondent-parent's psychological or emotional illness might rebut what a petitioner's evidence had shown to be willful behavior."

Further, although the *Roberson* Court found that N.C.G.S. § 7A-289.32(5) does not contain a "requirement that petitioner independently prove or that the termination order find as fact respondent's ability to pay support during the relevant statutory time period[,]" the Court also found that "[r]espondent could have rebutted petitioner's evidence of his ability to pay by presenting evidence that he was in fact unable to pay support . . . ." *In re Roberson*, 97 N.C. App. at 281, 387 S.E.2d at 670. Thus, in an action to terminate parental rights, the respondent parent may present evidence to prove he was unable to pay child support in order to rebut a finding of willful failure to pay under N.C.G.S. § 7A-289.32(5).

In the present case, the record is replete with evidence that respondent suffered from severe alcoholism and that because of this condition, respondent was unable to maintain permanent employment for an extended period of time and to therefore pay child support. In 1985, respondent lost his driver's license due to his alcohol related driving offenses, and in 1988 he was convicted of driving while his license was permanently revoked and spent thirty days in jail. Thereafter, respondent ceased driving and moved to Greenville, North Carolina, where he moved from job to job due to his alcohol dependency.

Specifically, the evidence shows, as the trial court found, that respondent started working as a chef at the Greenville Country Club in January, 1989 and that he was fired in March, 1989 for drinking. Respondent was unemployed from March, 1989 until the beginning of 1990 when he was employed at the Plant and See Nursery. Respondent testified that the people he worked with at Plant and See were his drinking friends and that in August, 1990, he "reached [the] bottom" and realized that he "couldn't live at the rate [he] was going much longer." Respondent attended Alcoholics Anonymous that month and quit his job in September.

Although respondent decided to cease consuming alcohol in 1990, respondent was still having problems maintaining permanent employment at this time. The evidence shows, and the trial court found, that after respondent quit his job at Plant and See, just before Christmas, he tried to begin his own catering business. In the middle of January and February, however, the business slowed down, and

respondent did not generate enough income to rent space for his business. Respondent had to, therefore, terminate the catering business. Then at the beginning of 1991, respondent worked for four to six months with Cypress Glenn Methodist Retirement Home in Greenville. Thereafter, respondent picked up odd jobs.

It was not until March, 1992 when respondent's license was restored, that he obtained employment on a permanent basis as an agricultural chemical salesman for SMI working on commission. Undisputed evidence contained in the guardian ad litem's report also shows that at this time, respondent told petitioner that "he wanted to pay his back child support and set up regular visitation . . . ." Thereafter, petitioner filed her petition to terminate respondent's parental rights.

Our review of this evidence shows that respondent presented plentiful evidence of his inability to pay child support in the year prior to the filing of the petition to terminate his parental rights due to his inability to maintain employment, caused by both his alcoholism and lack of a driver's license. The record clearly shows that respondent tried to get back on his feet after he decided to remain sober in 1990 but that he experienced numerous failed attempts at maintaining gainful employment. Although we note that respondent became actively involved in his pre-formed grits endeavor in 1990, the record is silent as to any financial gain he had from this project at any time prior to the filing of the petition to terminate his parental rights.

Further, the undisputed evidence shows that when respondent finally did regain his driver's license in March, 1992 and began a job earning a steady income, he indicated to petitioner that he wished to begin paying child support again, and he did begin paying child support in June, 1992, paying a lump sum of $750.00 in June and $7,750.00 in July, 1992. Thus, our review of the record and the evidence contained therein shows that the trial court's finding that respondent "willfully" failed to pay child support "without justification" for a year preceding the filing of the petition to terminate his parental rights was not supported by clear, cogent and convincing evidence.

"Manifestly, the termination of parental rights is a grave and drastic step[,]" and "[p]arental rights are to be protected regardless of the economic situation of the individual parent." *In re Dinsmore*, 36 N.C. App. 720, 726-27, 245 S.E.2d 386, 389 (1978). We hold that the trial court erred in finding a willful failure by respondent to pay child support without justification.

BOST v. VAN NORTWICK

[117 N.C. App. 1 (1994)]

### WILLFUL ABANDONMENT

**[3]** Next, we hold that the trial court erred in concluding that respondent "willfully abandoned" the children for a period of at least six consecutive months preceding the filing of the petition pursuant to N.C. Gen. Stat. § 7A-289.32(8). " ' "[A]bandonment imports any wilful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child . . . ." ' " *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982) (citations omitted).

> Abandonment has also been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child. . . .

*Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citation omitted). Further, "[a]bandonment requires a wilful intent to escape parental responsibility and conduct in effectuation of such intent." *Id.* at 502, 126 S.E.2d at 608 (citation omitted). In this context, "[t]he word 'willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation." *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986).

In the present case, in support of its conclusion that respondent abandoned the children, the trial court found that "[r]espondent made a deliberate decision to devote his attention to his entrepenurial [sic] endeavors and in the process paid no child support for at least three years prior to the filing of the petition and withheld his presence, love, care and affection from the children as well."

As discussed previously, the finding that respondent willfully failed to pay child support is not supported by clear, cogent, and convincing evidence. Further, the law in North Carolina is such that "a mere failure of the parent of a minor child in the custody of a third person to contribute to its support does not in and of itself constitute abandonment. Explanations could be made which would be inconsistent with a wilful intent to abandon." *Pratt*, 257 N.C. at 501-02, 126 S.E.2d at 608. Our review of respondent's inability to pay child support due to his dependency on alcohol and related financial problems does not support a finding of willful abandonment.

Additionally, we do not find support for the trial court's finding that respondent willfully "withheld his presence, love, care and affection from the children" during the relevant statutory time period. The relevant time period under N.C. Gen. Stat. § 7A-289.32(8) is the "six consecutive months immediately preceding the filing of the petition" to terminate parental rights, which would be from 22 November 1991 to 22 May 1992 in the present case. During this time, however, the trial court found that respondent visited the children during the Christmas holiday and that in March, 1992, respondent attended three of the children's soccer games. The undisputed evidence also shows that at that time, respondent told petitioner that he wanted to pay his back child support and set up regular visitations.

We also note that during the relevant time, respondent lived in Greenville, North Carolina and his children lived in Sanford, North Carolina and that respondent did not have a driver's license from 1985 until March, 1992, so that he was unable to drive to see his children on his own until that time. We do not find that respondent's actions evince a settled purpose to forego all parental duties and relinquish all parental claims to the children. Accordingly, we reverse the trial court's conclusion that respondent willfully abandoned his children.

## NEGLECT

[4] Finally, we hold that the trial court erred in determining that respondent neglected his children as defined in N.C. Gen. Stat. § 7A-517(21) by not providing proper care, supervision or discipline for the children and concluding that based on this neglect, grounds for terminating respondent's parental rights existed under N.C. Gen. Stat. § 7A-289.32(2).

Under N.C. Gen. Stat. § 7A-289.32(2), parental rights may be terminated if the parent has neglected the child as defined under N.C. Gen. Stat. § 7A-517(21). N.C. Gen. Stat. § 7A-517(21) defines "Neglected Juvenile,":

> A juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law.

"[T]ermination of parental rights for neglect may not be based solely on conditions which existed in the distant past but no longer

BOST v. VAN NORTWICK

[117 N.C. App. 1 (1994)]

exist." *In re Ballard,* 311 N.C. 708, 714, 319 S.E.2d 227, 231-32 (1984). "The trial court must . . . consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *Id.* at 715, 319 S.E.2d at 232 (citation omitted). Further, "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding." Id.* (emphasis in original).

In the present case, respondent is an admitted recovering alcoholic. The undisputed evidence shows that since 1987, throughout his battle with alcoholism, respondent has failed to visit his children on a regular schedule and has been sporadic with support payments, failing to pay any child support in 1989, 1990, and 1991. Assuming *arguendo* that these findings support a finding of neglect, our review of the record shows a considerable change in conditions such that a finding of neglect at the time of the hearing is not supported by clear, cogent and convincing evidence.

In August, 1990, the trial court found that respondent decided to cease consuming alcohol and began attending Alcoholics Anonymous. Further, the trial court found that three individuals who worked closely with respondent in 1991 indicated that since August, 1991, respondent has not been intoxicated or used alcohol in their presence. The record also shows that after respondent regained his license in March, 1992, he attended three of the children's soccer games and expressed his wishes to resume visitation with his children.

At the time of the termination proceedings, respondent was employed in a steady job for the first time in a number of years, and he had been alcohol free for over two years. Additionally, at the time of the hearing, respondent had reduced his child support arrears from $15,200 to $2,200, and he testified that since June, 1992, he had been paying $750 a month in child support, $500 in arrears and $250 to keep current. Based on these findings, we conclude that at the time of the hearing, insufficient evidence existed to support a finding of neglect within the meaning of N.C. Gen. Stat. § 7A-289.32(2).

Thus, our review of the record shows insufficient evidence to support the trial court's finding that substantial grounds exist for terminating respondent's parental rights pursuant to N.C. Gen. Stat. § 7A-289.32. Accordingly, for the foregoing reasons, we reverse the trial court's termination of respondent's parental rights as to his two minor children and remand this case for dismissal of the petition for

termination of parental rights pursuant to N.C. Gen. Stat. § 7A-289.31(c) which provides, "[s]hould the court determine that circumstances authorizing termination of parental rights do not exist, the court shall dismiss the petition . . . ."

## SUSPENSION OF VISITATION

[5]  Respondent also appeals from the trial court's order granting petitioner's motion filed pursuant to N.C. Gen. Stat. § 50-13.7 to suspend respondent's visitation rights provided for in the order of 22 May 1989. N.C. Gen. Stat. § 50-13.7(a) provides that "an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." " '[C]ustody' as used in G.S. 50-13.7 was intended to encompass visitation rights as well as general custody." *Clark*, 294 N.C. at 576, 243 S.E.2d at 142.

Under N.C. Gen. Stat. § 50-13.7(a), " '[c]hanged circumstances' means a 'substantial change of circumstances affecting the welfare of the child . . . .' " *Correll v. Allen*, 94 N.C. App. 464, 468, 380 S.E.2d 580, 583 (1989) (citation omitted). "A trial court's 'findings of fact modifying a child custody order are conclusive on appeal if supported by competent evidence, . . . even though there is evidence to the contrary.' " *Hamilton v. Hamilton*, 93 N.C. App. 639, 642, 379 S.E.2d 93, 94 (1989).

In the present case, the trial court based its finding of a "substantial change in circumstance[s]" on its findings that since the entry of the last visitation order of 22 May 1989, (1) the court terminated respondent's parental rights, (2) the children have expressed their desire not to visit with respondent and to be adopted by Jim Bost, and (3) respondent has been absent from the children's lives. Based on these findings, the trial court concluded that it would be in the best interest of the children to have respondent's visitation rights suspended.

Based on our holding above that the trial court improperly terminated respondent's parental rights, the trial court's first finding is no longer supported by the evidence. Further, based on our review of the record, we find that the trial court's third finding that respondent has been absent from the children's lives since the entry of the 22 May 1989 visitation order is unsupported by the evidence. In fact, the trial court found and the record shows that in 1990, respondent visited the children during the Christmas holiday, that during 1991, respondent

saw the children in May at a dance recital, at one of Christian's baseball games, and during the Christmas holiday, and that in 1992 respondent came to three of the children's soccer games in March.

Further, we find that in light of all of the evidence contained in the record, the finding that the children have expressed their desire not to visit with respondent and to be adopted by Jim Bost does not support a finding of changed circumstances and a conclusion that it is in the best interest of the children to suspend respondent's visitation rights. As set out above, " '[t]he expressed wish of a child of discretion is . . . never controlling upon the court, since the court must yield in all cases to what it considers to be for the child's best interests, regardless of the child's personal preference.' " *Clark*, 294 N.C. at 577, 243 S.E.2d at 142.

In the present case, our review of the record, especially in light of the reports of the court appointed psychologist, who found that although it would take some time to rebuild the trust between respondent and his children, the children's lives could be enhanced by a relationship with respondent, and of the guardian ad litem, who recommended that respondent's "parental rights not be terminated, and that the parties attempt a reasonable visitation schedule with family counseling with psychiatrists for all involved, including [petitioner,]" shows insufficient evidence to support a finding of a change in circumstances to suspend defendant's visitation rights.

We agree with the guardian ad litem that under the circumstances of this case, "[i]f, after all of this, the children on their own, decide to sever the relationship with their father [at the age of majority], this will be their decision and no one elses [sic]." (Emphasis in original.) Accordingly, we reverse the order of the trial court suspending respondent's visitation rights.

From the trial court's perspective and in fact the petitioner's perspective, the easiest solution to this case and the troubled relationship that has existed between the respondent father and his ex-wife and children would be to terminate the father's parental rights. Permanently severing respondent's right to foster and re-establish his relationship with his children might well be the expedient and most comfortable course of conduct to pursue, but under the facts of this case, this Court concludes that such a decision is neither supported by the facts or law nor furthers the policy of this State to give fundamental recognition and support to the bonds that exist between natural parents and their children. Despite his past failings and faults,

this Court sees no merit to a decision that precludes a good faith effort by the father to re-kindle the love and affection that once existed between him and his children.

Accordingly, we reverse the orders of the trial court terminating respondent's parental rights and suspending respondent's visitation rights.

Reversed.

Judge WYNN concurs with separate opinion.

Judge JOHNSON dissents with separate opinion.

Judge WYNN concurring.

I agree that plaintiff has not established the existence of any of the grounds for termination of defendant's parental rights by clear, cogent, and convincing evidence as required by N.C. Gen. Stat. § 7A-289.30(e) and that the trial court therefore erred by terminating defendant's parental rights.

The trial court found the following grounds for termination under N.C. Gen. Stat. § 7A-289.32: neglect, willful abandonment of the children, and willful failure to support the children. The trial court did not make any findings that defendant had neglected the children as of the time of the termination proceeding which is the proper period of inquiry under the statute. *See In re Parker*, 90 N.C. App. 423, 368 S.E.2d 879 (1988). The petition for termination was filed on 22 May 1992, therefore defendant could not be found to have willfully abandoned his children for six consecutive months preceding the petition when he attended their soccer games in March, 1992. N.C. Gen. Stat. § 7A-289.32(8) (1989).

The trial court also concluded that defendant willfully failed, without justification, to pay for the care, education and support of the children. In *In re Roberson*, 97 N.C. App. 277, 387 S.E.2d 668 (1990), this Court defined "willful" to mean, *inter alia*, " 'disobedience which imports knowledge and a stubborn resistance.' " *Id.* at 280, 387 S.E.2d at 670 (quoting *Jones v. Jones*, 52 N.C. App. 104, 110, 278 S.E.2d 260, 264 (1981)). The trial court's findings of fact do not reveal that defendant's conduct rose to the level of "willful" failure to pay child support. Therefore, I agree that the trial court's order should be reversed.

I note further the problematical nature of this termination proceeding where there was not a simultaneous petition for adoption of the children by the plaintiff's new husband. Defendant has presented evidence he is now willing and able to meet his support obligations. If the children are not adopted and defendant father's parental rights are terminated, only the mother would be legally and financially responsible for the children, an untoward result when defendant has rehabilitated himself and is willing to support the children.

Judge JOHNSON dissenting.

I respectfully dissent. I, like the trial judge, recognize that defendant/respondent's alcoholism has "significantly disrupted his life and impaired his ability to have a relationship with his children and to provide support" pursuant to court order. However, I, like the trial judge, believe that in the years immediately preceding plaintiff/petitioner's petition for termination of defendant/respondent's parental rights, defendant/respondent's accrued arrearages and lack of a relationship with his children were "the result of choices that he willfully, deliberately, intentionally and voluntarily made rather than the result of problems with alcoholism or the lack of a drivers [sic] license."

Because the court may terminate parental rights upon a finding of any one of the grounds listed in North Carolina General Statutes § 7A-289.32 (Cum. Supp. 1993), I only address North Carolina General Statutes § 7A-289.32(5). As the majority notes, North Carolina General Statutes § 7A-289.32(5) states:

[The court may terminate the parental rights upon a finding of . . . the following:]

. . .

(5) One parent has been awarded custody of the child by judicial decree, or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition willfully failed without justification to pay for the care, support, and education of the child, as required by said decree or custody agreement.

All findings of fact made as a result of an adjudicatory hearing terminating parental rights must be based on clear, cogent, and convincing evidence. North Carolina General Statutes § 7A-289.30(e)

**BOST v. VAN NORTWICK**

[117 N.C. App. 1 (1994)]

(1989). If the court determines the existence of any of the conditions authorizing a termination of parental rights then the court shall issue an order terminating parental rights, unless the court determines that the best interests of the child require otherwise. North Carolina General Statutes § 7A-289.31(a) (1989).

In the order terminating the parental rights of defendant/respondent in the case *sub judice*, the trial court found the following:

18. On December 6, 1985 this court entered its child support order requiring Respondent to pay child support in the amount of $250.00 per month and this Order has remained in effect continually since that time.

19. Petitioner alleged in her petition that [defendant/respondent] was $15,200.00 in arrears in his child support obligation at the time the Petition was filed. On or about June 18, 1992, [defendant/respondent] filed a response to the Petition and admitted that he failed to pay child support as required by the court's support Order entered December 6, 1985 for a period of time. Respondent further stated in his verified Motion in the Cause for Determination of Prospective Child Support that because of unemployment, dependency upon alcohol and lack of financial means that he has failed to pay support in . . . accord with the prior Orders of this court.

20. As of May 22, 1992, the date the Petition was filed, Respondent was in arrears in his child support obligation in the amount of $15,200.00. Respondent made no child support payments during 1992 prior to May 22, 1992, and made no child support payments during 1991, 1990 and 1989.

21. Between January 1, 1989, and June 18, 1992, Respondent, in addition to failing to pay the Court ordered child support, also failed to provide any other form of financial assistance for the children.

22. Prior to the time that Respondent ceased paying child support all together, he had a history of being sporatic [sic] in his support payments. This Court has issued Orders to show cause relating to Respondent's failure to pay child support during December 1983, July 12, 1984 ($450.00 arrearage), November 7, 1985 ($650.00 arrearage), February 20, 1986 ($1075.00 arrearage), March 4, 1986 ($1125.00 arrearage), and October 10, 1986 ($500.00 arrearage). Respondent was gainfully employed during these periods of time

and could have made child support payments on a regular basis but elected not to do so.

. . .

33. The Petition to Terminate Parental Rights was filed by [petitioner] on May 22, 1992. On June 2, 1992, [defendant/respondent] paid $750.00 in child support to the Lee County Clerk of Superior Court. This was the first payment that [defendant/respondent] made towards child support in at least three years and also the first financial contribution for the children of any kind in the preceding three years. Thereafter on July 22, 1992, [defendant/respondent] paid $7,750.00 towards his child support obligation with this payment being made to the Lee County Clerk of Superior Court. These funds were obtained through a loan [defendant/respondent] obtained using his mother to co-sign for the loan. Respondent made a number of promises between August 1990 and May 22, 1992, to begin to pay child support but never followed through despite the fact that he was working during this period and could have paid support.

. . .

78. The court is satisfied that [defendant/respondent] has a serious drinking problem and that in 1985 his driver's license was permanently revoked, which things significantly disrupted his life and impaired his ability to have a relationship with his children and to provide support pursuant to this court's Order. However, the court is also persuaded and finds as a fact that during August 1990 [defendant/respondent] attempted to begin his sobriety and became very actively involved in [an] entrepreneurial project to mass produce preformed grits. This project required a great deal of intellectual stamina, physical endurance and tenacity. Apparently [defendant/respondent] applied all these skills and traits rather successfully and has brought his project to the point where some think it will soon reach fruition. [Defendant/respondent,] however, did not apply himself with the same diligence, tenacity and ingenuity to maintaining a relationship with his children after August 1990 or to paying his child support obligation as required by this court. . . . Therefore the [accrued arrearages and defendant/respondent's lack of a relationship with his children] are the result of choices that he willfully, deliberately, intentionally and voluntarily made rather than the result of problems with alcoholism or the lack of a drivers [sic] license.

The trial court concluded as law "that the grounds to terminate [defendant/respondent's] parental rights exists as provided for in G.S. 7A-289.32(5). On the date the Petition was filed, Respondent owed $15,200 in child support, made no payments since 1989, despite his promises to do so, and elected to spend his time on his entrepreneurial project rather [than] earning wages to care for his children." I agree with the trial court and find that plaintiff/petitioner has shown by clear, convincing and cogent evidence that defendant/respondent "willfully failed without justification" to pay child support per the terms of the child support agreement.

Having found as such, the inquiry is now to determine if "the best interests of the child require that the parental rights of such parent not be terminated." North Carolina General Statutes § 7A-289.31(a). I recognize that both defendant/appellant and the guardian ad litem find the testimony of Dr. Linda Silber, the child psychologist appointed by the court, persuasive in that Dr. Silber did not recommend termination of defendant/respondent's parental rights. I further recognize that it was also the minor children's guardian ad litem's opinion that the best interests of the minor children would not be served by terminating defendant/respondent's parental rights. Nonetheless, having reviewed the record in its entirety, I believe the trial court had ample evidence to support its decision to terminate defendant/respondent's parental rights. Irrespective of defendant's child support arrearages, this evidence includes the findings that defendant/respondent infrequently visited the minor children during the years 1987 to 1992; that from 1987 through the date of the last hearing in this matter, defendant/respondent did not write any letters to his minor children or have phone conversations of any length with his minor children on a regular basis; that from 1987 to July 1992, defendant/respondent never sought the assistance of any court to help him maintain a relationship with his children; that defendant/respondent applied himself with tenacity and clarity to his entrepreneurial project, but that he did not apply this same tenacity and sense of purpose to maintaining a relationship with his children; and that defendant/respondent could have maintained relationships with his minor children through letter writing, telephone calls and visitations, but chose not to do so. And, although clearly not determinative of this issue, I finally note that the court found that the minor children testified to the court that they have no desire to see or get to know defendant/respondent; that both of the minor children have developed happy and secure relationships living with their mother

and her husband, Jim Bost; and that the minor children want to be adopted by Mr. Bost and Mr. Bost will in fact adopt the minor children at a time when it is legally proper to do so.

In child custody matters, "wide discretion is vested in the trial judge. *He has the opportunity to see the parties in person and to hear the witnesses, and his decision ought not to be upset on appeal absent a clear showing of abuse of discretion.*" *In re Custody of Pitts*, 2 N.C. App. 211, 212, 162 S.E.2d 524, 525 (1968) (emphasis added). I find no abuse of discretion performed by the trial judge herein.

I would affirm the decision of the trial court.