IN THE SUPREME COURT OF NORTH CAROLINA

No. 365A19

Filed 14 August 2020

IN THE MATTER OF: K.L.M., K.A.M., and K.L.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 13 May 2019 by Judge Robert J. Crumpton in District Court, Wilkes County. This matter was calendared for argument in the Supreme Court on 29 July 2020 but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Paul W. Freeman Jr. for petitioner-appellee mother.*

*Sean P. Vitrano for respondent-appellant father.*

NEWBY, Justice.

Respondent appeals from the trial court's order terminating his parental rights to K.L.M. (Kevin)[1], K.A.M. (Amy), and K.L.M. (Laura) in this private termination action. We affirm.

Respondent and petitioner are the biological father and mother of Kevin, who was born in 2012, and twins Amy and Laura, who were born in 2017. Respondent and petitioner were married in February 2013 and lived together as husband and wife until their separation in March 2017. During their marriage, respondent abused

---

[1] Pseudonyms are used to protect the identities of the juveniles and for ease of reading.

drugs; committed acts of violence against petitioner, which included shooting petitioner in the leg in Kevin's presence; failed to provide for the needs of the children; and was either incarcerated, in rehabilitation, or otherwise absent from the home with his whereabouts unknown for much of the time.

On 3 December 2018, petitioner filed a petition to terminate respondent's parental rights to Kevin, Amy, and Laura on the grounds of neglect, dependency, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (6)–(7) (2019). Around the same time that petitioner filed the petition for termination, petitioner also filed a complaint for absolute divorce and custody of the children. On 9 January 2019, the trial court entered a judgment for absolute divorce that also granted legal and physical custody of the children to petitioner and ordered respondent not to have contact with petitioner or the children unless and until he seeks such contact by motion and obtains a court order granting it.

The trial court terminated respondent parental rights on the grounds of neglect, dependency, and willful abandonment on 13 May 2019. *See* N.C.G.S. § 7B-1111(a)(1), (6)–(7). In making its determination, the trial court found the relationship between petitioner and respondent to be "chaotic and defined in many ways by the repeated acts of violence perpetrated upon the Petitioner by the Respondent, and the Respondent's subsequent apologies and promises of changed behavior, the Petitioner's acceptance of these promises, reconciliation, and subsequent repetition of violence." The trial court described the incident during which

respondent shot petitioner, respondent's abuse of drugs, and respondent's failure to provide financial and emotional support for the children. The trial court found that respondent had "demonstrated a complete indifference to the children" and "ha[d] abandoned the children."

The trial court made the following findings regarding the best interests of the children:

> 15. [Kevin] is currently six (6) years old; [Amy] is currently two (2) years old; and [Laura] is currently two (2) years old. All of the children are physically healthy and are thriving in Wilkes County, North Carolina.
>
> 16. The Petitioner and children reside with the maternal grandparents . . . . They have resided with [the maternal grandparents] since moving to Wilkes County. The children are doing well in this home and all of their needs are being met.
>
> 17. Although physically healthy, [Kevin] is participating in mental health counseling. He began this therapy to deal with the trauma surrounding the Respondent shooting the Petitioner in [Kevin's] presence. [Kevin] has greatly improved since moving to Wilkes County and participating in counseling. When he first arrived in Wilkes [County], [Kevin] was angry and withdrawn. Now, he is happy, smiling and more outgoing. He is doing well in school and has adapted readily to the consistency and predictability of his current living arrangements. He has a regular schedule and is thriving in his current environment.
>
> 18. None of the children have a bond with the Respondent. The twins have had no relationship with the Respondent at any time.

19.      Adoption is not an issue in these proceedings.

20.      The Petitioner is gainfully employed and is able to meet the children's material needs.

21.      The Petitioner is meeting all of the children's emotional needs.

Based on the findings, the trial court concluded that grounds existed to terminate respondent's parental rights and that "[i]t [was] in the best interests of the children to terminate the Respondent's parental rights." Respondent appealed.

Respondent does not challenge the above dispositional findings; therefore, those findings are binding on appeal. *See In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 54 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). In fact, respondent asserts that

> [t]he trial court appropriately considered and made factual findings regarding [the best interest] factors [provided by N.C.G.S. § 7B-1110](a)(1), (2), and (4): the children's ages, likelihood of adoption, and bond with Respondent. The court also appropriately considered under (a)(6) that the children lived in a stable, nurturing, and financially secure environment with Petitioner and her parents in Wilkes County.

Nevertheless, respondent challenges the trial court's conclusion that it was in the best interests of the children to terminate his parental rights, essentially arguing the trial court erred in weighing the factors. We disagree.

"Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In*

*re Z.A.M.*, 374 N.C. 88, 94, 839 S.E.2d 792, 796–97 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)). If the trial court determines at the adjudicatory stage that one or more of the grounds in N.C.G.S. § 7B-1111(a) exists to terminate parental rights, the trial court proceeds to the dispositional stage at which point it must "determine whether terminating the parent's rights is in the juvenile's best interest[s]" based on the following criteria:

> (1)　The age of the juvenile.
>
> (2)　The likelihood of adoption of the juvenile.
>
> (3)　Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4)　The bond between the juvenile and the parent.
>
> (5)　The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6)　Any relevant consideration.

N.C.G.S. § 7B-1110(a). The trial court is required to consider all of the factors and make written findings regarding those that are relevant. *Id.*

"The [trial] court's assessment of a juvenile's best interest[s] at the dispositional stage is reviewed only for abuse of discretion." *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 423 (2019); *see also In re Z.A.M.*, 374 N.C. at 99, 839 S.E.2d at 800 (reaffirming this Court's application of an abuse of discretion standard of review to the trial court's best interests determination). "[A]buse of discretion results

where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.R.A.*, 373 N.C. at 199, 835 S.E.2d at 423 (alteration in original) (quoting *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015)).

Respondent relies on the decision of the North Carolina Court of Appeals in *Bost v. Van Nortwick*, 117 N.C. App. 1, 449 S.E.2d 911 (1994), for the assertion that "a finding that the children are well settled in their new family unit . . . does not alone support a finding that it is in the best interest[s] of the children to terminate respondent's parental rights," *id.* at 8, 449 S.E.2d at 915. The trial court's best interests determination here, however, was not based solely on a finding that Kevin, Amy, and Laura were settled in a new family unit. In addition to finding that the children were doing well in the home with petitioner and their maternal grandparents, the trial court considered the young ages of the children, the children's lack of a bond with respondent, Kevin's success in therapy in overcoming the trauma caused by witnessing respondent shoot petitioner in his presence, the benefits to Kevin from the consistency of the current living arrangements, and petitioner's ability to meet the children's material and emotional needs. The trial court made its determination regarding the children's best interests in this case after weighing the combination of these facts, along with the trial court's finding that adoption was not an issue.

Moreover, unlike the father in *Bost*, the children in this matter have no bond with respondent, and respondent has never acted consistent with his declarations that he wanted to be involved in the children's lives and was willing to make the necessary changes to do so. The trial court made additional, unchallenged findings that respondent (1) had failed in past attempts to stop using drugs despite stints in in-patient rehabilitation; (2) had not contacted the children since December 2017; (3) had failed to provide for the family's needs, even when he was not incarcerated; (4) had shown no interest in the children since the parties' separation; and (5) "is not currently able to provide care for the children and will be incapable of providing care for the children for the foreseeable future." Lastly, unlike *Bost*, the guardian *ad litem* that was appointed to represent the interests of the juveniles in this case advocated for the termination of respondent's parental rights. *See id.* at 9–13, 449 S.E.2d at 916–18.

In our recent decision in *In re C.J.C.*, 374 N.C. 42, 839 S.E.2d 742 (2020), a private termination case, this Court explained that the likelihood of adoption "is only one factor which the trial court must consider." *Id.* at 49, 839 S.E.2d at 748.

> In our view, the trial court's findings demonstrate that it considered the factors set forth in N.C.G.S. § 7B-1110(a) and determined that [the child's] young age, the child's lack of any bond with respondent, and the child's need for consistency—combined with respondent's lack of involvement with the child—supported a finding that termination of respondent's parental rights was in [the child's] best interests.

*Id.* at 49, 839 S.E.2d at 747. Thus, we held that the trial court's conclusion that termination was in the child's best interests was neither arbitrary nor manifestly unsupported by reason and affirmed the termination order. *Id.* at 50, 839 S.E.2d at 748.

As in *In re C.J.C.*, the trial court's findings in this case concerning the young ages of the children, the children's well-being in their current living arrangements with petitioner and their maternal grandparents, the lack of any bond between the children and respondent, Kevin's success in overcoming the trauma caused by respondent, and respondent's lack of interest and involvement in the children's lives demonstrate that the trial court considered the factors in N.C.G.S. § 7B-1110(a), and the trial court's findings support its conclusion that it was in the best interests of Kevin, Amy, and Laura to terminate respondent's parental rights. The trial court's determination that termination of respondent's parental rights was in the juveniles' best interests was neither arbitrary nor manifestly unsupported by reason. Accordingly, the order terminating respondent's parental rights is affirmed.

AFFIRMED.