IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-25

Nos. 248A20 and 249A20

Filed 19 March 2021

IN THE MATTER OF: G.G.M., S.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 9 March 2020 by Judge Christy E. Wilhelm in District Court, Cabarrus County. This matter was calendared for argument in the Supreme Court on 11 February 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Seth B. Weinshenker for petitioner-appellees.*

*Ashley A. Crowder for respondent-appellant father.*

EARLS, Justice.

Respondent, the father of G.G.M. (George) and S.M. (Sarah)[1], appeals from the trial court's orders terminating his parental rights on the grounds of neglect and willful abandonment. Because we hold the trial court did not err in concluding that grounds existed to terminate respondent's parental rights based on willful abandonment and that termination of his parental rights was in the children's best interests, we affirm the trial court's orders.

Petitioners are the maternal grandmother and step-grandfather of George and

---

[1] Pseudonyms are used to protect the juveniles' identities and for ease of reading.

Sarah. Respondent and the children's mother met in high school. They were living together when George was born in May 2008 but they were never married. The parents' relationship ended in February 2009, and the mother and George moved in with petitioners. The mother was pregnant with Sarah at the time.

¶ 3         The parents initiated a Chapter 50 custody action, and in an order filed on 6 April 2010, the mother was granted primary custody of George with respondent having scheduled visitation. In a Temporary Order Modifying Visitation filed on 20 August 2010, the trial court modified respondent's visitation to allow only for supervised visits.

¶ 4         The mother moved out of petitioners' home with the children in October 2010. However, the mother had financial issues, and in October 2011 the children went to live with petitioners until the mother could improve her situation. The children have resided with petitioners ever since.

¶ 5         On 17 March 2011, the mother filed a petition to terminate respondent's parental rights to George. In an order filed on 9 December 2011, the trial court found grounds to terminate respondent's parental rights based on neglect and his willful failure to pay a reasonable portion of the cost of care for George but did not find that it was in George's best interests to terminate respondent's parental rights. Accordingly, the trial court did not terminate his parental rights at that time.

¶ 6         In November 2013, shots were fired into respondent's home while he was inside

with his now fiancée. No one was injured, and the perpetrator was never caught. On the morning of 27 December 2013, respondent was shot multiple times while on his way to work. The perpetrators were never identified. After he was released from the hospital, respondent lived with his aunt in Atlanta, Georgia, for a few months before coming back to North Carolina, where he has remained.

¶ 7        Respondent did not have any contact with the children after he was released from the hospital in late December 2013 until 30 June 2019 when he came to petitioners' home with two police officers without any prior arrangement or notice that he was coming. The reason for his visit on 30 June 2019 was that he learned that the Cabarrus County Department of Human Services ("DHS") had opened an investigation of the mother for alleged physical abuse of George and Sarah. George came outside of the home, gave his father a hug, and spoke with him briefly, but petitioners did not allow respondent to take either child with him. In response to respondent's unannounced visit, petitioners obtained an *Ex Parte* Custody Order on 3 July 2019 which maintained physical custody with petitioners and ordered respondent to have no contact with the children.

¶ 8        Approximately one week after his 30 June 2019 visit, respondent again came to petitioners' home with a law enforcement officer and sought to take the children. Petitioners showed the officer the *Ex Parte* Custody Order, and respondent left the home without seeing either child.

¶ 9    On 16 July 2019, petitioners filed petitions seeking to terminate respondent's parental rights to George and Sarah on the grounds of neglect and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (7) (2019). On 15 August 2019, respondent filed an answer opposing the termination of his parental rights. Following a hearing held on 10 February 2020, the trial court entered orders on 9 March 2020 concluding that respondent's parental rights were subject to termination on both grounds alleged in the petitions and that termination of respondent's parental rights was in George's and Sarah's best interests. Accordingly, the trial court terminated respondent's parental rights. Respondent appealed from both orders. On 9 June 2020, respondent filed a motion seeking to consolidate the appeals from the trial court's orders terminating his parental rights. We allowed the motion on 10 June 2020 and consolidated the cases for appeal.

## I.    Adjudication Stage Issues

¶ 10    Respondent argues the trial court erred by concluding that grounds existed to terminate his parental rights based on neglect and willful abandonment. We review a trial court's adjudication that grounds exist to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are

binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)). "Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. at 407 (citing *In re Moore*, 306 N.C. 394, 404 (1982)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019). "[A] finding of only one ground is necessary to support a termination of parental rights . . . ." *In re A.R.A.*, 373 N.C. 190, 194 (2019).

¶ 11        A trial court may terminate a parent's parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 251 (1997) (quoting *In re Adoption of Searle*, 82 N.C. App. 273, 275 (1986)). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501 (1962).

¶ 12        "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *In re B.C.B.*, 374 N.C. 32, 35

(2020) (quoting *In re Adoption of Searle,* 82 N.C. App. at 276). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77 (2019) (quoting *In re D.E.M.*, 257 N.C. App. 618, 619 (2018)).

¶ 13        In this case respondent's relevant conduct is essentially the same as it relates to each child. The trial court's findings of fact supporting its adjudications are essentially identical in each termination order, other than the juvenile's name. To examine the relevant matters pertaining to the adjudication of grounds involving both children, the discussion below refers to the findings of fact and conclusions of law as enumerated in the trial court's termination order entered in George's case but is equally applicable to Sarah.

¶ 14        Respondent first challenges finding of fact 16 as not being supported by the evidence. In finding of fact 16, the trial court found:

> Pursuant to [N.C.G.S. §] 7B-1111(a)(7), the Respondent has willfully abandoned the minor child . . . for a period of time of at least six months prior to the filing of Petitioners' Petition to Terminate the Parental Rights of the Respondent on July 16, 2019. The Findings of Fact above show that Respondent has willfully neglected and refused to perform the natural and legal obligations of parental care, support and maintenance for the minor child. The Findings of Fact above show that Respondent has willfully withheld his presence, his love, his care for the minor child, and the opportunity to display filial affection. The Findings of Fact above show that Respondent has shown a purpose

and deliberation in his intent to abandon the minor child. The Findings of Fact above show that Respondent has willfully abdicated his parental role to the Petitioners since October 2011. This finding of willful abandonment is made by clear, cogent and convincing evidence.

Respondent acknowledges that he had no contact with the children from late December 2013 until 30 June 2019. However, respondent argues that his actions do not amount to willful abandonment because he "had neither the deliberate intent nor purpose to abandon the minor children." Respondent points to his testimony that his lack of contact with the children during the five and one-half year period was due to his fear for his safety and the safety of his children after he was injured in an unsolved shooting in December 2013. Respondent argues that he had a reasonable belief that the mother and her associates were the perpetrators of the shooting "given the tense nature of the relationship between [the m]other and [respondent]" and that the shooting was in "direct retaliation for his seeking to modify the Temporary Custody Order for the minor children." He argues that it was due to this "grave concern" that he did not seek visitation with the children following his release from the hospital. Therefore, he argues that finding of fact 16 was not supported by clear, cogent, and convincing evidence, and as a result, the trial court erred in concluding that grounds existed based on willful abandonment.

The trial court's findings of fact establish that respondent "made no attempt whatsoever to contact" the children or to participate in the children's lives from late

December 2013 through 30 June 2019, a period of over five years. The trial court found that respondent did not send any cards or letters to the children or petitioners, did not send any gifts, did not purchase clothing or other items for the children, and did not provide any financial assistance to petitioners for the children's benefit. The trial court found that respondent knew where petitioners lived but did not attempt to see the children from late December 2013 to 30 June 2019. The trial court also found that petitioners maintained the same phone number and email address since 2013; however, respondent never asked them for this information in order to contact the children. The trial court's findings indicate that, from December 2013 until the filing of the petition to terminate his parental rights in July 2019, respondent failed to provide support and maintenance, did not write or call his children, did not send them gifts, and did not otherwise act as a parent. These findings demonstrate that respondent "willfully withheld his love, care, and affection from [the children] and that his conduct during the determinative six-month period constituted willful abandonment." *In re C.B.C.*, 373 N.C. at 23.

¶ 17    Respondent contends that his lack of contact for the five and one-half year period following the December 2013 shooting was not "wholly inconsistent with a desire to maintain custody of the minor children." He argues that he "had neither the deliberate intent nor purpose to abandon the minor children" but rather "made a choice, albeit a very difficult and sacrificial choice, to keep his children safe and free

from the fear of harm." Respondent relies on his testimony that he did not seek custody or visitation after being released from the hospital following the December 2013 shooting due to his fear for his safety and the safety of the children. He contends the trial court "did not doubt the veracity or credibility" of his testimony. Thus, he argues the evidence did not demonstrate that he willfully abandoned the children.

However, in reviewing a trial court's adjudication of grounds to terminate parental rights, our review is limited to "whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re C.B.C.*, 373 N.C. at 19 (quoting *In re Montgomery*, 311 N.C. at 111). It is the trial court's "responsibility to 'pass[ ] upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom.' " *In re A.R.A.*, 373 N.C. at 196 (alteration in original) (quoting *In re D.L.W.*, 368 N.C. 835, 843 (2016)). Because "the trial court is uniquely situated to make this credibility determination . . . appellate courts may not reweigh the underlying evidence presented at trial." *In re J.A.M.*, 372 N.C. 1, 11 (2019).

Here, the trial court weighed the evidence and ultimately determined that respondent's conduct during the determinative period showed his willful intention to abandon the children. *See In re K.N.K.*, 374 N.C. 50, 53 (2020) ("The willfulness of a parent's actions is a question of fact for the trial court."). The trial court made specific findings regarding the two shootings in November and December 2013. Specifically,

regarding the December shooting, the trial court found that

> [o]n December 27, 2013 the Respondent was shot with a firearm several times while on his way to work at approximately 7:00 a.m. The unidentified perpetrators were never caught. After getting out of the hospital, Respondent went to live with his Aunt in Atlanta, Georgia for a few months in 2014, and then came back to North Carolina. However, the Respondent did not attempt to contact the minor child[ren], or to re-establish his relationship with the minor child[ren] upon his return from Georgia.

This finding, along with the trial court's other findings, demonstrates that the trial court acknowledged that respondent had been injured in an unsolved shooting but ultimately determined that his failure to contact the minor children upon his return to North Carolina was willful and that his conduct during the determinative period constituted willful abandonment.

¶ 20 We hold the trial court's findings of fact support its ultimate finding and conclusion that respondent willfully abandoned the children. The trial court's findings demonstrate that respondent had no contact with the children for a period of over five years prior to the filing of the termination petition on 16 July 2019, with the exception of one brief interaction with one of the children. The trial court's findings also demonstrate that respondent provided no support to the children and withheld his love, care, and affection from the children. The trial court was entitled to consider respondent's years-long absence from the children's lives when determining respondent's credibility and intent to abandon his children during the

six months preceding the filing of the petition. *See In re N.D.A.*, 373 N.C. at 77. Therefore, the trial court did not err by concluding that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7).

## II.    Disposition Stage Issues

¶ 21        Respondent also challenges the trial court's conclusions that it was in George's and Sarah's best interests to terminate his parental rights.

¶ 22        At the dispositional stage of a termination proceeding, the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2019). In doing so, the trial court

> may consider any evidence, including hearsay evidence as defined in [N.C.G.S. §] 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* Although the trial court must consider each of the factors in N.C.G.S. § 7B-1110(a), written findings of fact are required only "if there is conflicting evidence concerning the factor, such that it is placed in issue by virtue of the evidence presented before the district court." *In re A.R.A.*, 373 N.C. at 199 (cleaned up) (quoting *In re H.D.*, 239 N.C. App. 318, 327 (2015)).

"The trial court's dispositional findings are binding on appeal if supported by any competent evidence. The trial court's determination of a child's best interests under N.C.G.S. § 7B-1110(a) is reviewed only for abuse of discretion." *In re J.S.*, 374 N.C. 811, 822 (2020) (citations omitted). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *In re K.N.K.*, 374 N.C. at 57.

Respondent does not challenge the trial court's findings regarding the children's ages and concedes that subsection (a)(3) is not applicable in this case because DHS is not involved and, therefore, there is no permanent plan for the children. Respondent does challenge the trial court's other dispositional findings of fact as not being supported by competent evidence.

Respondent first challenges finding of fact 18(2) regarding the children's likelihood of adoption. In both orders the trial court found the following: "Though there was no testimony regarding adoption, the [c]ourt takes judicial notice that there is a pending custody action by the Petitioners, in which they are seeking custody of

the two minor children, [George and Sarah], from both the Respondent and the biological mother . . . ." Respondent contends this finding is not supported by competent evidence because there is no evidence in the record that petitioners are seeking adoption and "nothing in the record to support any likelihood of adoption of either minor child." However, the trial court did not find that there was a likelihood of adoption. Rather, the trial court recognized that no evidence was presented regarding adoption and took judicial notice of the pending civil custody action filed by petitioners seeking custody of the children. This finding is supported by competent evidence. The trial court is not required to find a likelihood of adoption in order for termination to be in a child's best interests. *See In re M.M.*, 200 N.C. App. 248, 258 (2009), ("[N]othing within [N.C.G.S.] § 7B-1110 . . . requires that termination lead to adoption in order for termination to be in a child's best interests."), *disc. review denied*, 364 N.C. 241 (2010).

¶ 26        Respondent next argues that finding of fact 18(4) regarding the children's bond with respondent is not supported by competent evidence. Respondent argues the finding is "solely a recital of the children's therapist['s] testimony" which was "clearly hearsay and does not fall within any exception." We disagree. Contrary to respondent's assertion, finding of fact 18(4) does not recite the therapist's testimony. The trial court specifically found that Sarah has no memory of respondent and that he is a stranger to her, and that George has some memory of respondent but does not

have a bond with him. The trial court further found that the guardian *ad litem* (GAL) and the therapist "provided testimony in this regard," and that it found "such testimony to be credible." The finding demonstrates that the trial court considered the testimony of the GAL and the therapist, determined their testimony was credible, and made an independent finding regarding the children's bond with respondent based on that testimony. *See In re D.L.W.*, 368 N.C. at 843 (stating that it is the trial court's duty to consider all of the evidence, pass upon the credibility of the witnesses, and determine the reasonable inferences to be drawn therefrom). Moreover, N.C.G.S. § 7B-1110(a) specifically allows the consideration of hearsay evidence in determining a child's best interests. N.C.G.S. § 7B-1110(a). Therefore, the trial court's finding is supported by competent evidence.

¶ 27      Respondent next challenges the portions of finding of fact 18(5) stating that he willfully abdicated his parenting role to petitioners since October 2011. Respondent argues he did not make "a conscious and intentional decision to avoid his parental role" but rather that "he made the very difficult decision to put the safety of the minor children first before all other things." Therefore, he argues, this finding is not supported. However, as discussed previously, the trial court's findings demonstrate that respondent had no contact with the children for five and one-half years despite having the ability to do so. The trial court weighed the credibility of respondent's testimony and ultimately found that respondent willfully abandoned the children.

Based on the evidence presented, the trial court made the reasonable inference that respondent abdicated his parenting role to petitioners by having no contact or involvement in the children's lives for over five years. We conclude that this finding is sufficiently supported by competent evidence.

¶ 28          Lastly, respondent challenges finding of fact 18(6) as not supported by competent evidence because the trial court relied heavily on the GAL's report and testimony. Respondent argues the GAL "did little to investigate [respondent]," did not visit his home or speak to his fiancée, and relied heavily on the therapist's opinion in writing her report. Respondent's challenge to the finding raises the question of whether the GAL had a sufficient basis for her testimony and is a challenge to the GAL's credibility as a witness. However, it is the duty of the trial court to determine the weight and credibility of the evidence. *In re A.R.A.*, 373 N.C. at 196. The trial court specifically found the testimony of the GAL and the therapist to be credible. Therefore, we conclude that there was sufficient competent evidence in the record to support this finding.

¶ 29          Respondent further contends the trial court abused its discretion in determining that termination of his parental rights was in the children's best interests. He argues that the findings of fact in this case are "almost identical" to the findings of fact found in *Bost v. Van Nortwick*, 117 N.C. App. 1 (1994), where the Court of Appeals determined the trial court abused its discretion in terminating the

respondent-father's parental rights.

¶ 30        In *Bost*, the trial court concluded that

> [g]iven that the children are thriving under their present
> circumstances, the presence of a complete family structure
> able to meet the emotional and economic needs of the
> children, the expressed desire of the children not to see
> their father, their desire to be adopted by Jim Bost and the
> pain and disruption involved with any attempt at
> reestablishing a relationship, the [c]ourt finds as a fact that
> it would not be in the best interest of the children to follow
> the Guardian Ad Litem's reccommendations [sic] and
> furthermore that termination is in their best interest.

*Id.* at 8 (alterations in original).

¶ 31        Respondent argues that here, similarly, the trial court found that Sarah expressed that she "wants no relationship whatsoever with the Respondent"; that George "later expressed fears and concerns for having his place of residence and way of life changed in any way because of the Respondent"; that the children have a close and loving relationship with petitioners "who have provided for all of the child[ren's] educational, emotional, physical and financial needs, with little to no contribution from either parent, since October 2011"; and that the therapist testified the children were concerned about their placement with petitioners being disrupted. He argues that these findings "were found to be insufficient by the Court [of Appeals] in *Bost* and the decision to terminate 'in light of the paramount rights of the natural parent to help raise and support his children' was found to be an abuse of discretion," quoting *Bost*, 117 N.C. App. at 13. Thus, he contends the same standard should apply in this

case.

¶ 32        However, *Bost* is distinguishable from the present case. First, the Court of Appeals in *Bost* stated that "a finding that the children are well settled in their new family unit . . . does not *alone* support a finding that it is in the best interest of the children to terminate respondent's parental rights." *Bost,* 117 N.C. App. at 8 (emphasis added). Here, however, the finding that the children were doing well with petitioners was not the sole support for the trial court's conclusion that termination was in the children's best interests. Second, while the respondent-father in *Bost* once had been unable to maintain employment or relationships with the children because he was an alcoholic, the evidence also showed that the respondent-father had ceased using alcohol a couple of years before the petition to terminate his parental rights was filed, had paid large sums of back child support, and had begun to visit the children. *Id.* at 5–6. In contrast, here respondent had not had any contact with the children, had not provided any support for the children, and had not shown any desire to be a part of the children's lives from December 2013 until two weeks before the filing of the petition to terminate parental rights on 16 July 2019. Finally, in *Bost,* the GAL and the court-appointed psychologist thought it in the best interests of the children to *not* terminate the respondent-father's parental rights. *Id.* at 9. In the present case, the GAL recommended that it *would* be in in the children's best interests to terminate respondent's parental rights. These are all significant

distinctions that explain why the ultimate conclusion by the trial court in this case is not an abuse of discretion.

¶ 33    The trial court's findings demonstrate that it considered the relevant factors under N.C.G.S. § 7B-1110(a) and made a reasoned decision based on those findings. Specifically, the trial court made findings regarding the children's ages; the pending civil custody action filed by petitioners; the children's lack of a bond with respondent after his five and one-half year absence; the children's "close and loving relationship" with petitioners "who have provided for all of the child[ren's] education, emotional, physical and financial needs"; and the negative psychological impact on the children from respondent's sudden return into their lives. These findings, along with the trial court's other findings of fact, support its conclusion that termination of respondent's parental rights was in the children's best interests.

## III.    Ineffective Assistance of Counsel Claim

¶ 34    Lastly, respondent contends he received ineffective assistance of counsel at the termination hearing. Respondent argues his trial counsel was ineffective because she failed to make any objections during the termination hearing and failed to introduce any evidence of petitioners' "retaliatory seeking [of] an *Ex Parte* Custody Order against [respondent]" or of DHS's investigation of the mother. Specifically, respondent argues his counsel failed to object to the introduction of the temporary custody order into evidence and failed to make any hearsay objections, most notably

during the testimony of the children's therapist. Respondent asserts that "[g]iven the constitutionally protected rights at issue, [he] was denied a fair hearing as a result of his trial counsel's failure to perform at an objectively reasonable standard."

¶ 35    "Parents have a right to counsel in all proceedings dedicated to the termination of parental rights." *In re L.C.,* 181 N.C. App. 278, 282 (cleaned up) (quoting *In re Oghenekevebe,* 123 N.C. App. 434, 436 (1996)), *disc. review denied,* 361 N.C. 354 (2007); *see also* N.C.G.S. § 7B-1101.1 (2019). "Counsel necessarily must provide effective assistance, as the alternative would render any statutory right to counsel potentially meaningless." *In re T.N.C.*, 375 N.C. 849, 854 (2020). "To prevail on a claim of ineffective assistance of counsel, respondent must show that counsel's performance was deficient and the deficiency was so serious as to deprive [him] of a fair hearing." *Id.* at 33 (cleaned up) (quoting *In re Bishop*, 92 N.C. App. 662, 664 (1989)). "To make the latter showing, the respondent must prove that 'there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.'" *In re T.N.C.*, 375 N.C. at 854 (quoting *State v. Braswell*, 312 N.C. 553, 563 (1985)); *see also In re S.C.R.*, 198 N.C. App. 525, 531 ("A parent must also establish he suffered prejudice in order to show that he was denied a fair hearing."), *appeal dismissed*, 363 N.C. 654 (2009). Respondent has made no showing that he was prejudiced as a result of his counsel's alleged deficient performance. *See In re Dj.L.*, 184 N.C. App. 76, 87 (2007) (an ineffective assistance claim is meritless

when "[i]t is difficult to see a defense on which respondent could have prevailed, and respondent cites no such theory on appeal."). In this case, respondent has failed to show that any of the alleged deficiencies in his counsel's performance or conduct, whether taken alone or collectively, would have resulted in a different outcome. Therefore, respondent cannot prevail on his claim of ineffective assistance of counsel.

## IV.    Conclusion

The trial court did not err in concluding that respondent's parental rights were subject to termination based on willful abandonment; nor did the trial court abuse its discretion by concluding that termination of respondent's parental rights was in the children's best interests. Respondent also failed to show he received ineffective assistance of counsel at the termination hearing. Accordingly, we affirm the trial court's orders terminating his parental rights to George and Sarah.

AFFIRMED.