IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-119

No. 460A20

Filed 29 October 2021

IN THE MATTER OF: B.R.L.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 14 August 2020 by Judge Marion M. Boone in District Court, Surry County. This matter was calendared in the Supreme Court on 21 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Edward Eldred for respondent-appellant mother.*

*J. Clark Fischer for petitioner-appellees.*

*No brief filed on behalf of the Guardian ad Litem.*

EARLS, Justice.

¶ 1    Respondent, the mother of minor child B.R.L. (Billy)[1], appeals from a trial court order terminating her parental rights on the grounds of neglect and willful abandonment. Because we hold the trial court erred in concluding that grounds existed to terminate respondent's parental rights based on willful abandonment, and because we hold that the trial court failed to make any findings regarding the likelihood of future neglect, we reverse the trial court's order and remand the case to

---

[1] A pseudonym is used to protect the juvenile's identity and for ease of reading.

allow further factfinding on the ground of neglect.

## I.    Factual Background

¶ 2          This is a private termination matter involving respondent and Billy's paternal grandparents, Mr. and Mrs. H. (petitioners). On 4 May 2017, the Surry County Department of Social Services (DSS) filed a petition alleging Billy was a neglected juvenile. The petition alleged that on 5 January 2017, DSS received a report that Billy was living in an injurious environment due to domestic violence, substance abuse, and improper supervision. Both Billy and his older sister had tested positive for controlled substances at birth.

¶ 3          The petition also alleged that respondent and Billy's father engaged in criminal activity and drug use while the children were present. On 18 March 2017, the parents were arrested for shoplifting, and the children were placed into a temporary safety placement by the parents. On 23 March 2017, while responding to a call of possible drug activity at a Dollar General store, law enforcement officers found marijuana and methamphetamines, along with other drug paraphernalia, in a location accessible to the children in their parents' vehicle.

¶ 4          Following a 30 March 2017 Child and Family Team Meeting, the parents entered into a Family Services Agreement to address substance abuse, domestic violence, and parenting skills. DSS alleged that, at the time of the filing of the juvenile petition in May 2017, the parents had not begun working towards achieving

the goals necessary to alleviate the risk of harm to Billy.

On 12 June 2017, the parents were arrested in South Carolina on drug charges. Respondent was incarcerated until 14 September 2017.

A hearing on the juvenile petition was held on 12 October 2017. On 31 October 2017, the trial court entered an order adjudicating Billy as a neglected juvenile. In a separate dispositional order entered that same day, the court awarded physical and legal custody of Billy to petitioners. The court found that respondent had acted inconsistently with her constitutionally protected status as a parent and was not fit to have custody of Billy. Respondent was granted two hours of supervised visitation once per month to be supervised by petitioners, which could be expanded at the discretion of petitioners. The court changed the permanent plan to legal custody with a relative and determined the permanent plan had been achieved, relieved DSS of further involvement in the matter, and waived further hearings.

On 25 April 2018, respondent was arrested for a probation violation in Surry County, North Carolina. Respondent remained incarcerated from 25 April through 4 August 2018. On 21 August 2018, respondent requested a visit alone with Billy. Petitioners agreed to meet but denied respondent's request for an unsupervised visit. Respondent visited with Billy on 22 August 2018.

Respondent visited with Billy again on 18 September 2018. However, she arrived one hour late to her two-hour visit. On 29 September 2018, respondent was

arrested for a probation violation. Respondent admitted the violation, and her previously suspended sentence was activated. Respondent remained incarcerated until 26 March 2019.

On 11 June 2019, respondent filed a motion for review in the case requesting more visitation with Billy. A hearing was scheduled on the motion for 18 July 2019. On 11 July 2019, petitioners filed a motion to continue, and the matter was continued to 17 September 2019 but ultimately not held before the termination hearing.

Also on 11 July 2019, petitioners filed a petition to terminate respondent's parental rights alleging the grounds of neglect, willful failure to make reasonable progress to correct the conditions that led to the child's removal from the home, and willful abandonment.[2] N.C.G.S. § 7B-1111(a)(1)–(2), and (7) (2019). Following hearings on 9 December 2019 and 5 June 2020, the trial court entered an order on 14 August 2020 concluding that grounds existed to terminate respondent's parental rights based on neglect and willful abandonment. In a separate dispositional order entered the same day, the court concluded that termination of respondent's parental rights was in Billy's best interests. Accordingly, the trial court terminated respondent's parental rights. Respondent appealed.

## II. Willful Abandonment

[2] Petitioners also sought to terminate the parental rights of Billy's father; however, he did not appeal and is not a party to this appeal.

¶ 11 We review a trial court's adjudication that grounds exist to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)).

¶ 12 Our statutes are clear that before terminating parental rights on the grounds of willful abandonment, a trial court must find that the petitioner has presented clear, cogent, and convincing evidence the parent "has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion . . . ." N.C.G.S. § 7B-1111(a)(7). While the question of willful intent is a factual one for the trial court to decide based on the evidence presented, *In re B.C.B.*, 374 N.C. 32, 35 (2020), and while the trial court's factual determination is owed deference, it remains our responsibility as the reviewing court to examine whether the evidence in the case supports the trial court's findings and whether, as a legal matter, the trial court's factual findings support its conclusions of law, *In re Montgomery,* 311 N.C. 101, 111 (1984).

¶ 13 Here, the evidence does not support the trial court's finding that respondent

willfully abandoned Billy during the relevant six-month period. "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 251 (1997) (quoting *In re Adoption of Searle*, 82 N.C. App. 273, 275 (1986)). "To find that a parent has willfully abandoned his or her child, the trial court must 'find evidence that the parent deliberately eschewed his or her parental responsibilities in their entirety.' " *In re A.L.L.*, 376 N.C. 99, 110 (2020) (quoting *In re E.B.*, 375 N.C. 310, 318 (2020)).[3] "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77 (2019) (quoting *In re D.E.M.*, 257 N.C. App. 618, 619 (2018)).

¶ 14      The petition to terminate respondent's parental rights in Billy was filed on 11 July 2019. Thus, the determinative six-month period is 11 January 2019 to 11 July 2019. In arguing that the trial court erred by concluding that her parental rights in Billy were subject to termination based on willful abandonment, respondent contends

---

[3] The dissent relies principally on *In re Lunsford*, 359 N.C. 382, 388 (2005), for the proposition that infrequent visits do not foreclose a finding of willful abandonment. But *Lunsford* involved an entirely different statute governing when a parent can inherit from a deceased intestate child, where the trial court made findings of fact that the parent had "sporadic contacts with his daughter *over a seventeen-year period*." *Id.* (emphasis added). In the context of this case, our Court has made clear that willful abandonment requires findings of fact demonstrating the "purposeful, deliberate and manifest willful determination" to abandon all parental responsibilities. *In re A.G.D.,* 374 N.C. 317, 319 (2020).

that the evidence and findings of fact demonstrate she exercised her legal rights during the six-month determinative period in several ways, including by taking multiple proactive steps to maintain her relationship with Billy. Therefore, she maintains that her actions were "simply inconsistent with the determination that she had a 'purposeful, deliberative and manifest willful determination' to relinquish her parental claims to Billy[.]"

¶ 15 Respondent further challenges as not supported by the evidence finding of fact 77, which states that "[t]he dates and times set forth herein [in the termination order], regarding the mother contacting Petitioners to set up a visit or requesting a picture of the child, are the only dates and times since June 9, 2017 that the mother has contacted Petitioners to set up visits or contacted Petitioners." Respondent asserts Mrs. H. herself testified that respondent asked for a visit on 8 May 2019, a date which is not reflected in the trial court's findings. We agree.

¶ 16 Mrs. H. testified at the hearing that on 8 May 2019, respondent contacted her and asked if Billy could spend the night at respondent's mother's house. Mrs. H. testified that, in response, she told respondent that all visits must be supervised by petitioners. In finding of fact 66, the trial court found only that on 8 May 2019, "Petitioner informed [respondent] that any visits with the child will be supervised by Petitioners pursuant to the amended disposition order and the mother will have to give Petitioners prior notice in order to schedule visits around their work and other

responsibilities." The trial court's finding makes no mention of respondent's initial contact with petitioners that prompted Mrs. H. to inform respondent that only petitioners could supervise visits. Thus, the trial court's finding that the dates and times set forth in the termination order are the only dates on which respondent contacted petitioners requesting a visit is not supported by the evidence. Therefore, we disregard finding of fact 77. *See In re J.M*, 373 N.C. 352, 358 (2020).

¶ 17    The unchallenged findings demonstrate that respondent was incarcerated for over half of the determinative six-month period and was released on 25 March 2019. Following her release, respondent requested visits with Billy on 27 March, 8 May, and 6 June 2019, all during the relevant six-month period. The findings also show that respondent visited with Billy on 20 June 2019. Both Mrs. H. and respondent also testified that respondent visited with Billy in May 2019 at a museum with the maternal grandmother.[4] Additionally, respondent filed a pro se motion for review to

---

[4] The dissent's argument that this Court acts improperly when it reviews evidence in the record is misplaced. In conducting the requisite analysis on appeal to determine whether a trial court's findings of fact are supported by clear, cogent, and convincing evidence, we necessarily examine the evidence in the record produced in the underlying proceedings. *See, e.g.*, *In re D.W.P.*, 373 N.C. 327, 328 (2020) (affirming order terminating respondent's parental rights "[a]fter careful consideration of . . . the record evidence[.]"); *In re M.S.E.*, 2021-NCSC-76, ¶ 13 (affirming order terminating respondent's parental rights "[a]fter careful review of the record[.]"); *In re A.M.L.*, 2021-NCSC-21, ¶ 18 (affirming trial court finding because "[t]he record supports this determination."). Further, while we agree with the dissent generally that "[f]indings of fact supported by competent evidence are binding on appeal even if evidence has been presented contradicting those findings," *In re N.B.*, 195 N.C. App. 113, 116 (2009), we are not bound to defer to factual findings that are unsupported by the record. *See, e.g.*, *In re S.M.*, 375 N.C. 673, 684 (2020) (disregarding findings of fact that are unsupported by clear, cogent, and convincing evidence).

increase her visitation with Billy one month before the termination petition was filed. The motion was calendared for hearing in July 2019 but continued on petitioners' motion to the date of the termination hearing and never heard. Respondent's filing seeking to obtain increased visitation with Billy prior to the filing of the petition for termination of her parental rights further demonstrates that she did not intend to forego all parental duties and relinquish all parental claims to Billy during the relevant period and undermines the trial court's finding and conclusion that she willfully abandoned Billy.

¶ 18        Respondent's actions do not rise to the level of willful abandonment, considering her two visits, her attempts to schedule additional visits, and her filing of a motion to increase her visitation,[5] all of which occurred during the relevant time period before the petition for termination was filed. *See, e.g.*, *In re D.T.L.*, 219 N.C. App. 219, 222 (2012) (stating that the respondent-father's filing of a civil custody action "cannot support a conclusion that he had a willful determination to forego all parental duties and relinquish all parental claims to the juveniles"); *see also Bost v.*

---

[5] We do not suggest that filing a motion to increase visitation, standing alone, necessarily defeats the assertion that a parent has willfully abandoned his or her child within the meaning of N.C.G.S. § 7B-1111(a)(7). We do hold that it is evidence to be considered in the willful abandonment analysis, especially given that a parent's failure to file such a motion is routinely found to be evidence supporting a finding that the willful abandonment ground has been proven. *See, e.g.*, *In re E.H.P.,* 372 N.C. 388, 394 (2019) (holding that father's failure to seek to modify temporary custody judgment is evidence of willful abandonment); *In re A.L.S.,* 374 N.C. 515, 522 (2020) (holding that mother's failure to seek to modify a custody order is evidence of willful abandonment).

*Van Nortwick,* 117 N.C. App. 1, 19 (1994) (finding no willful abandonment where the parent visited the children at Christmas, attended three soccer games, and indicated that he wanted to arrange support payments for the children and regular visitation), *appeal dismissed,* 340 N.C. 109 (1995). Accordingly, we hold that the trial court's findings of fact do not support its conclusion that respondent's parental rights were subject to termination based on willful abandonment.

## III.    Neglect

Respondent next argues that the trial court erred in concluding grounds existed to terminate her parental rights based on neglect. Respondent contends the trial court failed to make a finding regarding the likelihood of future neglect and that the evidence would not support such a finding had one been made.

A trial court may terminate parental rights when it concludes that the parent has neglected the juvenile within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is one "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]" N.C.G.S. § 7B-101(15) (2019). In some circumstances, the trial court may terminate a parent's rights based on neglect that is currently occurring at the time of the termination hearing. *See, e.g., In re K.C.T.*, 375 N.C. 592, 599–600 (2020) ("[T]his

Court has recognized that the neglect ground can support termination . . . if a parent is presently neglecting their child by abandonment."). However, in other instances, the fact that "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing" would make "requiring the petitioner in such circumstances to show that the child is currently neglected by the parent . . . impossible." *In re N.D.A.*, 373 N.C. at 80. In this situation, "evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect— is admissible in subsequent proceedings to terminate parental rights[,]" but "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re Ballard*, 311 N.C. 708, 715 (1984).

After weighing this evidence, the court may find the neglect ground if it concludes the evidence demonstrates "a likelihood of future neglect by the parent." *In re R.L.D.*, 375 N.C. 838, 841 (2020). Thus, even in the absence of current neglect, the trial court may adjudicate neglect as a ground for termination based upon its consideration of any evidence of past neglect and its determination that there is a likelihood of future neglect if the child is returned to the parent. *Id.* at 841, n.3. In doing so, the trial court must consider evidence of changed circumstances that may have occurred between the period of prior neglect and the time of the termination hearing. *In re Z.V.A.*, 373 N.C. 207, 212 (2019) (citing *Ballard*, 311 N.C. at 715).

¶ 22    In this case, respondent does not dispute that there was a finding of prior neglect. She contends, however, that the trial court order does not establish that it "recognized its duty to assess the likelihood of 'future neglect.' " Respondent argues that the trial court failed to make any determination of future neglect and that the court found and concluded only that respondent "ha[s] neglected the child[.]"

¶ 23    We agree that the trial court's adjudication order is devoid of any determination of a likelihood of future neglect should Billy be returned to respondent's care. Indeed, the trial court made very few findings of fact directly related to respondent's ability to care for Billy at the time of the termination hearing or regarding any change in respondent's circumstances since the initial neglect adjudication. The only factual finding that directly addresses respondent's current circumstances and her ability to care for Billy is finding of fact 88, in which the court found that respondent was not physically disabled but was unemployed, did not have a driver's license, did not have a vehicle, and did not have stable housing. Although the trial court found that Billy was previously adjudicated neglected, the court did not make any finding regarding the likelihood that Billy would be neglected if he was returned to respondent's care, a finding which was necessary to sustain the conclusion that respondent's parental rights were subject to termination based on neglect. *See In re K.C.T.*, 375 N.C. at 599 (stating that "the trial court's order lacks any findings whatsoever that address the possibility of repetition of neglect").

¶ 24 Thus, we hold that the trial court's findings are insufficient to support the termination of respondent's parental rights on the ground of neglect.[6] *See In re C.L.H.*, 2021-NCSC-1, ¶10 (holding that the trial court erred in concluding the neglect ground existed where the trial court did not find that there would be a likelihood of future neglect and the findings of fact did not support such a conclusion). However, there may be evidence in the record from which the trial court could have made additional findings of fact that might have been sufficient to support a finding of a likelihood of future neglect. We therefore reverse the trial court's order but remand the matter allowing for further factual findings on this ground. *See In re K.N.*, 373 N.C. 274, 284 (2020); *In re N.D.A.,* 373 N.C. at 84.

## IV.   Conclusion

¶ 25 In summary, we reverse the trial court's order terminating parental rights but remand the case for further proceedings not inconsistent with this opinion, including, if appropriate, the entry of a new order containing proper findings of fact and conclusions of law addressing whether grounds exist pursuant to N.C.G.S. § 7B-1111(a)(1) to support the termination of respondent's parental rights in Billy. The trial court may, in the exercise of its discretion, receive additional evidence on remand if it elects to do so.

---

[6] For the same reasons discussed above that grounds did not exist to terminate parental rights based on willful abandonment, the findings do not support a conclusion of neglect by abandonment.

REVERSED AND REMANDED.

Justice BERGER dissenting.

The trial court's order does not contain findings related to the likelihood of future neglect, and I concur in the result reached by the majority as to that ground. However, "a finding of only one ground is necessary to support [ ] termination of parental rights." *In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019). Because the trial court's findings of fact and conclusions of law support termination of respondent's parental rights on the basis of willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7), I respectfully dissent.

The question before this Court is not what findings of fact could have been included in the trial court's order terminating respondent's parental rights. Rather, the appropriate question is whether the findings of fact set forth in the trial court's order support its conclusions of law. Here, they most certainly do.

A trial court may terminate parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7) (2019). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997). This Court has held that a "parent relinquishes all parental claims and abandons the child" when that parent "withholds his presence, his love, his care, the opportunity to display filial affection, and

wil[l]fully neglects to lend support and maintenance." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *In re B.C.B.*, 374 N.C. 32, 35, 839 S.E.2d 748, 752 (2020).

¶ 29 The majority concedes that the question of willful intent "is a factual one for the trial court to decide based on the evidence presented" and that "a trial court's factual determination is owed deference[.]" Indeed, the weighing of evidence and the determination of what facts to find are based upon the unique insight of the trial court and should be given deference upon review. As this Court has stated, a trial court's "observation[s] of [] parties and [] witnesses provide[s] him with an opportunity to evaluate the situation that cannot be revealed on printed page." *In re Montgomery*, 311 N.C. 101, 112 (1984).

¶ 30 It is rudimentary that this Court is limited to determining whether a trial court's "*findings* support the conclusion of law." *In re G.B.*, 377 N.C. 106, 2021-NCSC-34, ¶ 11 (emphasis added). The majority here inappropriately "goes beyond this task and supplements the trial court's order with new factual findings." *Id.*, ¶ 37 (Earls, J., dissenting). In doing so, the majority here usurps this duty from the trial court and operates as its own fact finder.

¶ 31 The trial court heard testimony and assigned weight to the evidence. The trial judge then made detailed findings of fact related to the evidence presented. The

majority's focus on the difference between two and three visitation requests by respondent ignores the reality that willful abandonment still exists here given the remaining findings of fact and conclusions of law set forth in the trial court's order.

¶ 32 The majority correctly notes that the relevant six-month period here is January 11, 2019, to July 11, 2019. However, the majority focuses solely on the latter portion of this period in its analysis. Despite the trial court finding as fact that respondent was incarcerated between January 2019 and March 2019, the majority fails to discuss respondent's actions, or lack thereof, during this time. The trial court determined from the evidence that respondent made no attempt to communicate with Billy while she was incarcerated, nor did she inquire about Billy's well-being. Instead, respondent's only effort to be a parent to Billy while she was incarcerated was prior to the determinative period when she sent Billy a book two weeks after his birthday in November 2018.

¶ 33 Our precedent is clear that respondent's incarceration does not absolve her of the parental duty she owed to Billy. *See In re L.M.M.*, 375 N.C. 346, 351, 847 S.E.2d 770, 775 (2020) (a "parent will not be excused from showing interest in [the] child's welfare by whatever means available," even if their "options for showing affection while incarcerated are greatly limited.") (emphasis omitted). The majority nonetheless overlooks respondent's failure to pursue any parental involvement with Billy during that time without explanation.

¶ 34    Moreover, respondent repeatedly failed to communicate with petitioners regarding visitations. Indeed, the trial court found that respondent only visited Billy once during the determinative period, and that was after she attempted to cancel that particular visitation. Respondent's absence from the juvenile's life was such that petitioner testified that Billy "[did not] know who [respondent was]."

¶ 35    Sporadic visitation requests and less frequent visits should not foreclose a finding of willful abandonment. Discussion on this point is noticeably absent from the majority opinion. This Court has held that neither continuous absence nor complete disregard for the child is required for willful abandonment. *In re Lunsford,* 359 N.C. 382, 390–91, 610 S.E.2d 366, 372 (2005) (affirming trial courts finding that only sporadic contacts between a parent and minor child over the child's life was sufficient to constitute willful abandonment.). Indeed, because "a child's physical and emotional needs are constant," a parent's responsibilities "cannot be discharged on an ad hoc, intermittent basis." *Id.*; *see also Pratt*, 257 N.C. at 503 (rejecting the respondent-father's contention that one visit during the determinative six-month period refuted a finding of willful abandonment.).

¶ 36    The majority concludes that "respondent's actions do not rise to the level of willful abandonment, considering her two visits, her attempts to schedule additional visits, and her filing of a motion to increase her visitation, all of which occurred during the relevant time period before the petition termination was filed." In support, the

majority cites *In re D.T.L.* for the proposition that filing a civil custody action "cannot support a conclusion [of] a willful determination to forego all parental duties and relinquish all parental claims."[1] *In re D.T.L.,* 219 N.C. App. 219, 222, 722 S.E.2d 516, 518 (2012). However, the respondent-father in *D.T.L.* was prohibited by court order from seeing the minor children, markedly different than the situation before us. *Id.* The trial court's findings here indicate that no court order prevented respondent from participating more fully in her son's life; respondent alone did that. *See Lunsford*, 359 N.C. at 388, 610 S.E.2d at 370 (finding that the "major factors" preventing respondent-father from involvement in child's life were respondent's own "alcoholism and immaturity.").

¶ 37     No prior holdings of our appellate courts establish that the filing of a motion will negate a finding of willful abandonment. Yet the majority's mischaracterization of *D.T.L.* here may open that issue up to argument. Language in our precedent certainly does not support the position that an abandoning parent can avoid termination simply by taking the administrative step of filing a motion with our courts. *See Pratt*, 257 N.C. at 502, 126 S.E.2d at 609 (finding that abandonment is not merely an "ambulatory thing the legal effects of which a delinquent parent may

---

[1] The majority also offers for support on this point *In re E.H.P.*, 372 N.C. 388, 394 (2019) and *In re A.L.S.*, 374 N.C. 515, 522 (2020). Similarly, these cases involve respondent-parents who were prohibited from visitation by court orders and are distinguishable from the situation before us.

dissipate at will by the expression of a desire for the return of the discarded child.").

¶ 38 Additionally, and again without mention or discussion by the majority, Billy had significant medical issues. Respondent neither attended, nor attempted to attend, any of Billy's medical appointments. Moreover, she failed to provide financial support for care-related costs over the course of almost two years. In fact, respondent failed to pay any child support at all. One is hard-pressed to imagine a more obvious example of a parent's refusal to "lend support and maintenance." *Pratt,* 257 N.C. at 501, 126 S.E.2d at 608 (1962). Despite the parties each dedicating four pages of their briefs to this topic, the majority does not offer a single sentence on this point.

¶ 39 In this case, the trial court heard the evidence presented at the hearing to terminate respondent's parental rights. The trial court made findings of fact based upon that evidence, and those findings of fact support the conclusion that termination of respondent's parental rights was appropriate. I would affirm the termination of respondent's parental rights on the basis of willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7).

Chief Justice NEWBY and Justice BARRINGER join in this dissenting opinion.